**Kathleen A. SHANAGHAN, Plaintiff–Appellant,**

v.

**John D. CAHILL; Cahill & Associates, Incorporated, Defendants–Appellees.**

**No. 94–1628.**

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1995.

Decided June 28, 1995.

---

**ARGUED:** David Clifton Schroeder, Murphy, McGettigan, Richards & West, P.C., Alexandria, VA, for Appellant. David Rosenblum, Rosenblum & Rosenblum, P.C., Alexandria, VA, for Appellees.

Before WILKINSON and WILKINS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge WILKINSON wrote the opinion, in which Judge WILKINS and Senior Judge PHILLIPS joined.

## OPINION

WILKINSON, Circuit Judge:

This appeal presents the question whether the district court properly dismissed plaintiff's case for lack of jurisdiction because of an insufficient amount in controversy under 28 U.S.C. § 1332(a). The trial court felt compelled to dismiss all of plaintiff's claims when one count was eliminated and the remaining liquidated damages totalled less than fifty thousand dollars. Because we think the district court had discretion to retain the remaining counts, we reverse and remand the case for an appropriate exercise of that discretion.

### I.

In 1993, Kathleen Shanaghan brought this diversity action in Virginia against John Cahill and his company Cahill & Associates, Inc., seeking to recover on three separate debts. Her complaint alleged that in 1987 and 1988 she made three loans to Cahill and his company, in the amounts of $40,000, $23,696, and $14,700. She further alleged that the defendants had refused payment despite repeated demands, and were in default on all three debts.

The defendants filed an answer, and discovery proceeded through March of 1994. Plaintiff produced two promissory notes memorializing the loans of $23,696 and $14,700. She was unable, however, to provide a writing for the alleged loan of $40,000, though she has always maintained that such a writing exists. The defendants filed for partial

summary judgment in March of 1994, arguing that the claim on the $40,000 loan was barred by the Virginia Statute of Frauds, Va.Code § 11–2(4), and the Statute of Limitations, Va.Code § 8.01–246. The district court agreed and granted summary judgment on the $40,000 claim. Then, noting that the amount in controversy had fallen below fifty thousand dollars, the court dismissed the remaining claims for lack of subject matter jurisdiction. Plaintiff has appealed, challenging only the dismissal of her two smaller claims.

## II.

### A.

▪ Federal district courts possess jurisdiction over cases in diversity when "the matter in controversy exceeds the sum or value of $50,000." 28 U.S.C. § 1332(a) (1988). A plaintiff may aggregate smaller claims in order to reach this threshold, as was done in this case. *Griffin v. Red Run Lodge, Inc.,* 610 F.2d 1198, 1204 (4th Cir. 1979). After Shanaghan's claim for $40,000 was dismissed, however, the district court concluded it was bound by § 1332 to dismiss her remaining aggregated claims of $38,669. The court apparently believed it had no discretion in this matter, but rather was faced with a mandatory obligation to dismiss the case in its entirety, despite the possibility of a statute of limitations bar to refiling in state court, and regardless of the potential merit of the remaining claims.

▪ This assumption was in error. The basis for district court discretion in this context lies in the model of supplemental jurisdiction set forth in 28 U.S.C. § 1367. The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away. *See* 28 U.S.C. § 1367 (1993). Federal supplemental jurisdiction was created by the Judicial Improvement Act of 1990, Pub.L. No. 101–650, Title III, § 310(a), which codified the doctrine of pendent jurisdiction de-

veloped by the Supreme Court in the case of *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and its progeny.[1] Section 1367(a) provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. ·

28 U.S.C. § 1367(a). Supplemental jurisdiction thus allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims. *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138.

▪ Moreover, the statute is not limited to cases where the original basis for federal jurisdiction was a federal question. It clearly provides for the operation of supplemental jurisdiction in diversity cases. First, § 1367(a) is broadly phrased to provide for supplemental jurisdiction over claims appended to "any civil action" over which the court has "original jurisdiction." 28 U.S.C. § 1367(a). Second, § 1367(b) imposes specific limits on the use of supplemental jurisdiction in diversity cases in order to prevent the addition of parties that would destroy complete diversity as required by § 1332, but otherwise plainly contemplates the use of supplemental jurisdiction in that context. 28 U.S.C. § 1367(b). *See also* 28 U.S.C.A. § 1367, David Seigel, Practice Commentary 832 (1993) (noting that "[b]y no means does [§ 1367(b)] exclude [supplemental jurisdiction] from diversity cases in general."). The only possible interpretation of this language is that state law claims between diverse parties that do not, however, satisfy the jurisdictional amount requirements appended to diversity actions are cognizable under supplemental jurisdiction.

---

1. Of course, supplemental jurisdiction also incorporates the doctrine of ancillary jurisdiction.

*See* 28 U.S.C.A. § 1367.

The statute then goes on to provide that courts "may decline" to exercise supplemental jurisdiction in certain circumstances. 28 U.S.C. § 1367(c). In particular, a court has discretion to dismiss or keep a case when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. *See, e.g., Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993). Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n.7, 98 L.Ed.2d 720 (1988); *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993). The doctrine of supplemental jurisdiction "thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Cohill,* 484 U.S. at 350, 108 S.Ct. at 619.

### B.

There are several reasons why the supplemental jurisdiction model of discretion should apply when the amount in controversy falls below the fifty thousand dollar threshold, just as it does when a federal question or a diverse claim falls out of a case. First, the same basic pattern of circumstances exists in both contexts: the jurisdictional basis of the action fades away and the court is left with what would otherwise be a state law case. There is no way to distinguish a reduction of the amount in controversy from the disappearance of a federal claim as contemplated under § 1367(c)(3). Indeed, the factors applicable in the typical pendent jurisdiction case are equally applicable here—comity, the existence of a state limitations bar, and considerations of judicial economy. Whenever the basis for federal jurisdiction evaporates, Congress has provided for discretion. There are *no* situations wherein a federal court *must* retain jurisdiction over a state law claim, which would not by itself support jurisdiction. It makes little sense, then, to think of jurisdictional amounts as a separate category of cases when they so clearly fit into the congressional scheme of supplemental jurisdiction. It does make sense, however, to have *one rule* of district court discretion, not separate rules for separate jurisdictional bases when simple logic dictates that they be treated the same.

This point is illustrated by the fact that the grant of discretion to retain or dismiss residual state law claims in § 1367(c)(3) would apply in cases closely analogous to the one before us. For example, § 1367(c)(3) provides on its own terms for supplemental jurisdiction over an inadequate amount in controversy if the claim that is dismissed is in excess of $50,000. *See* 28 U.S.C. § 1367(c) ("courts may . . . exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"). In such a case the remaining smaller claims would have been "pendent" to the larger dismissed claim, and thus the court could choose to exercise jurisdiction over them. *See Worthams v. Atlanta Life Ins. Co.,* 533 F.2d 994, 997–98 (6th Cir.1976) (finding jurisdiction still existed over claim of $7,900 when other $100,000 claim was dismissed). Here, the only difference is that no single claim by itself carried plaintiff into federal court, and so she was forced to aggregate her various smaller claims to reach the jurisdictional threshold. Similarly, supplemental (ancillary) jurisdiction provides discretionary review of counterclaims of less than $50,000 even when the primary federal claim is dismissed. 28 U.S.C.A. § 1367, David Seigel, Practice Commentary 830 (1993). Hence, a reduction of the amount in controversy below the $50,000 limit simply does not affect the existence of discretion to either retain or dismiss the remaining claims.

Second, when § 1332 (diversity jurisdiction) and § 1367 (supplemental jurisdiction) are read together, the natural conclusion is that the discretionary model may be applied in the context of jurisdictional amounts in liquidated damages cases. Section 1332(a) provides positive, mandatory jurisdiction in diversity cases when the amount is over

$50,000. 28 U.S.C. § 1332(a). Section 1367(a) is a parallel to § 1332(a), providing a similar positive grant of supplementary jurisdiction. Section 1367(c), by contrast, is permissive, allowing a court to decline that mandatory jurisdiction when read in conjunction with § 1367(a). Thus, if § 1332(a) is read with § 1367(a), it fits together with the permissive language of § 1367(c), allowing courts to "decline" jurisdiction when the amount falls below $50,000.

Moreover, § 1367(b), which limits the use of supplemental jurisdiction in diversity cases, speaks only to preventing attempts by plaintiffs to circumvent complete diversity. It bars jurisdiction over certain claims against or by parties added through Fed. R.Civ.P. 14, 19, 20, or 24. 28 U.S.C. § 1367(b). Nothing in § 1367(b) precludes the use of a supplemental jurisdiction analysis in diversity cases when the issue is the amount in controversy rather than complete diversity. If Congress had wanted to limit the use of supplemental jurisdiction to prevent discretionary decisions in this context, § 1367(b) would have been the obvious place in which to do it.

Case law on jurisdictional amounts that predates § 1367 is in some tension with the statute. The case of *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), required retention of jurisdiction over cases falling below the jurisdictional amount threshold so long as the amount alleged in the complaint was made in good faith. *St. Paul*, 303 U.S. at 288, 58 S.Ct. at 590. *See also Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 711, 30 L.Ed.2d 739 (1972). *St. Paul* further held that a claim of good faith is negated only if it was a legal certainty that, at the time of the complaint, the plaintiff could not recover the requisite amount. *St. Paul*, 303 U.S. at 289, 58 S.Ct. at 590. However, the *St. Paul* test was developed long before the modern concepts of supplemental jurisdiction expressed in *Gibbs*. Under the *Gibbs* approach, federal courts have discretion to dismiss or retain residual state law claims. Congress, by adopting § 1367, expressed an emphatic preference for the *Gibbs* approach. A straightforward application of the *St. Paul* rule would nevertheless mandate retention of cases falling below the jurisdictional amount despite, for example, the existence of novel or complex issues of state law. Divesting federal courts of discretion in such circumstances simply cannot be squared with the statutory language. *See* 28 U.S.C. § 1367(c)(1). Thus, the strict *St. Paul* rule is inconsistent with the statutory framework of § 1367 and so must be modified to fit the contemporary congressional view of federal jurisdiction.

Indeed, any strict rule that mandates either retention or dismissal of residual claims in all cases operates in derogation of important competing interests. On the one hand, a standard tied exclusively to the *St. Paul* rule of good faith pleading fails to respect the congressional purpose in raising the jurisdictional amount to the fifty thousand dollar threshold. Congress recently raised the amount in an effort to prevent state law claims for modest sums from landing in federal court. *See* 136 Cong. Rec. S16295 (Section–by–Section Analysis of Judicial Improvements and Access to Justice Act) (noting increase intended to reduce federal caseload). *See also Snyder v. Harris*, 394 U.S. 332, 339–40, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969) (purpose of steady increases in jurisdictional amount is to stem rising caseload of federal courts). A strict rule, however, that required retention of all claims that pass the lenient threshold of "good faith" pleading violates this basic congressional purpose. It would require, for example, federal judges to resolve cases that Congress believed all along should be pressed in state court, because they involved both limited sums and purely state law claims. Thus, a rigid rule of retention would sacrifice the very purpose of a jurisdictional amount requirement, not to mention Congress' recent action in raising that amount five-fold. *See* U.S.C. § 1332(a).

On the other hand, a rigid rule requiring dismissal once the jurisdictional amount falls below the statutory standard would work a serious injustice. It might result in valid claims going unheard or in significant wastes of judicial resources. These were the same

concerns that motivated the creation of pendent jurisdiction in the first place. *See Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. Moreover, a rule of automatic dismissal would encourage defendants in attempts to bootstrap a win on a single liquidated claim into an overall victory. If district courts lacked discretion, they would be unable to combat such manipulations, and as a result meritorious claims might fall by the wayside. Thus, the potential injustice to litigants of a Rule of Dismissal is as undesirable as the flood of trivial claims that might result from a Rule of Retention. Justice is better served by a jurisdictional rule that includes some measure of discretion for the district court.

## C.

The application of § 1367's discretionary analysis in the context of a jurisdictional amount case is quite straightforward. First, the court should look to the face of the complaint itself to determine whether it is a legal certainty that plaintiff's claims do not reach the required amount. *See St. Paul*, 303 U.S. at 288, 58 S.Ct. at 590. Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case. This is akin to a "well-pleaded complaint" rule. Of course, if plaintiff has alleged only a small amount of damages or it is otherwise obvious that the jurisdictional amount under § 1332(a) cannot be satisfied, the court must dismiss the case outright for lack of jurisdiction. *Wiggins v. North American Equitable Life Assurance Co.*, 644 F.2d 1014, 1016–18 (4th Cir.1981). In this case, by contrast, it appears from the face of the complaint that Shanaghan had alleged claims totaling well over the $50,000 limit.

Second, if some event subsequent to the complaint reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case. Here, courts should be guided by the same kind of factors that inform decisions in the supplemental jurisdiction context when the federal basis of a case disappears. In general, courts should weigh convenience and fairness to both parties, as well as the interests of judicial economy. *See In Re Conklin*, 946 F.2d 306, 322 (4th Cir.1991) (citing *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138). In particular, it is important to consider whether the amount claimed in the complaint was made in good faith, or whether plaintiff was consciously relying on flimsy grounds to get into federal court. *See Rosado v. Wyman*, 397 U.S. 397, 404–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970) (distinguishing initial "insubstantiality" from subsequent "mootness"). Another critical equitable factor is the existence of any state limitations bars to refiling in state court.[2] *See Ridenour v. Andrews Federal Credit Union*, 897 F.2d 715, 722 (4th Cir.1990). Where, as here, a plaintiff might suffer serious prejudice from the dismissal of her action, courts should be more willing to retain the case despite the smaller amount in controversy. Next, courts should account for the amount of time and energy that has already been expended, and decide whether it might be more efficient to simply retain jurisdiction. *See Washington v. Union Carbide Corp.*, 870 F.2d 957, 962 (4th Cir.1989). Finally, other considerations may arise on a case-by-case basis, such as the existence of some significant issue of state law best resolved in state court, that could inform the trial court's determination whether to keep or dismiss the case entirely. *See McCullough v. Branch Banking & Trust Co., Inc.*, 844 F.Supp. 258, 260–62 (E.D.N.C.1993) (describing discretionary analysis under § 1367(c)(3)), *aff'd*, 35 F.3d 127 (4th Cir. 1994).

In sum, we leave it to the sound judgment of the district court to decide whether to exercise jurisdiction over residual liquidated

---

**2.** It is unclear whether the savings provision in § 1367(d), which tolls state statutes of limitations for state claims brought under § 1367(a), strictly applies to smaller aggregated claims which reach federal court through § 1332. District courts therefore should make an effort to determine whether the presence of a state savings or tolling statute would permit plaintiffs to proceed in state court free from any limitations bar.

claims under $50,000, so long as it was not a legal certainty from the outset that the plaintiff had no business being in federal court.

### III.

For the foregoing reasons, the judgment of the district court is reversed, and this matter is remanded with instructions to determine whether the court, in its discretion, should maintain jurisdiction over plaintiff's liquidated damages claims of $23,969 and $14,700.

*REVERSED AND REMANDED.*