WEST VIRGINIA–OHIO VALLEY
AREA I.B.E.W. WELFARE
FUND, et al., Plaintiff,

v.

THE AMERICAN TOBACCO COMPANY,
et al., Defendants.

No. CIV.A. 2:97–0978.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 19, 1998.

David B. Rodes, Goldberg, Persky, Jennings & White, P.C., Theodore Goldberg, Goldberg, Persky, Jennings & White, Anthony J. D'Amico, Goldberg, Persky, Jennings & Whites, Pittsburgh, PA, Brian Alan Prim, Goldberg, Persky, Jennings, White & Hostler, Huntington, WV, for West Virginia–Ohio Valley Area I.B.E.W. Welfare Fund.

P. Michael Pleska, Leonard B. Knee, Bowles Rice McDavid Graff & Love, Charleston, WV, for Anchor Tobacco Co., Goldsmit–Black, Inc., McClure Co., Inc.

Richard E. Rowe, J. David Fenwick, Goodwin & Goodwin, Charleston, WV, for British American Tobacco Co., Ltd.

Aaron H. Marks, Kasowitz, Benson, Torres & Friedman, New York, NY, Kenneth Knopf, Benjamin T. Hughes, Pullin, Knopf, Fowler & Flanagan, Charleston, WV, Michael M. Fay, Marie V. Santacroce, Kasowitz, Benson, Torres & Friedman, New York, NY, for Brooke Group, Ltd., Liggett & Myers, Inc., Liggett Group, Inc.

Gretchen M. Callas, Jackson & Kelly, W. Henry Jernigan, Jr., Jackson & Kelly, Charleston, WV, Kenneth N. Bass, Karen M. DeSantis, Kirkland & Ellis, Jennifer G. Gardner, Washington, DC, for Brown & Williamson Tobacco Corp.

Joseph P. Moodhe, Lynne Graubert, Bruce G. Merritt, Faune Devlin, Debevoise & Plimpton, New York, NY, Jane E. Harkins,

Brown & Levicoff, Beckley, WV, James M. Brown, Brown & Levicoff, Beckley, WV, for The Council for Tobacco Research—U.S.A., Inc.

Bruce M. Ginsberg, Miles A. Baum, Davis & Gilbert, New York, NY, Shawn P. George, George & Lorensen, Charleston, WV, for Hill & Knowlton, Inc.

Robert B. King, King, Allen, Guthrie & McHugh, Charleston, WV, David S. Eggert, Laura K. McNally, Arnold & Porter, Jack L. Lipson, Arnold & Porter, Charles E. Spicknall, Arnold & Porter, Washington, DC, Pamela L. Kandzari, Thomas E. McHugh, Allen Guthrie & McHugh, Charleston, WV, for Philip Morris Inc.

P. Michael Pleska, Leonard B. Knee, Bowles Rice McDavid Graff & Love, Charleston, WV, John D. Goetz, Jones, Day, Reavis & Pogue, Pittsburgh, PA, Robert F. McDermott, Jr., Jones, Day, Reavis & Pogue, Donald B. Ayer, Jones, Day, Reavis & Pogue, Washington, DC, for R.J. Reynolds Tobacco Co.

Robert V. Berthold, Jr., Tony L. O'Dell, Berthold & Tiano, Charleston, WV, for Tobacco Institute, Inc.

David L. Shuman, Shuman, Annand & Poe, Charleston, WV, for United States Tobacco Company.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Plaintiff West Virginia–Ohio Valley Area I.B.E.W. Welfare Fund's (Fund) motion to remand; (2) a motion to dismiss for lack of personal jurisdiction filed by Defendant Council for Tobacco Research U.S.A., Incorporated (CTR); (3) a motion to dismiss pursuant to *Rules* 12(b)(2), 12(b)(6) and 12(b)(7), *Federal Rules of Civil Procedure*, filed by the Tobacco Institute, Incorporated (TI); and (4) a suggestion for oral argument on a pending motion.[1] The Court **DENIES** the motion to remand and **DENIES** without prejudice the motions to dismiss. The Court further **DENIES** the motion for oral argument because argument would not materially aid the decisional process.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 1997 the Fund filed a fifty-nine (59) page complaint in the Circuit Court of Kanawha County, West Virginia. Defendants removed to this Court on October 10, 1997. The Notice of Removal was filed pursuant to 28 U.S.C. § 1331 and other statutes.[2]

The complaint alleges the Fund has paid, or will pay, health benefits of its participants and beneficiaries because of adverse health consequences caused by their exposure to products manufactured, marketed or promoted by Defendants. The Fund asserts it has for many years suffered harm and incurred significant expenses providing benefits and other assistance to eligible members suffering from tobacco-related injuries, diseases or sickness.

The Fund's complaint is somewhat novel, alleging in Counts I and III theories of unjust enrichment/restitution and conspiracy against the Defendants *directly* and further asserting in Count II *subrogated* claims for harm to Fund participants, including (1) fraud; (2) negligent misrepresentation; (3) negligence; (4) strict liability; (5) breach of warranty; and (6) violation of the West Virginia Consumer Credit and Protection Act. The Fund avers in paragraph 7 that it "is authorized to sue in its own name ... [pursuant to] 29 U.S.C. § 1132(d)(1)." Complaint at ¶ 7.

The summary plan description outlining the rights and obligations of the Fund provides as follows:

[t]o the extent that benefits are paid under this plan, the plan shall be subrogated and succeed to any right of recovery of the participant or beneficiary for benefits paid against any such person .... The partici-

---

1. The Court has under advisement Defendants' joint motion to dismiss, on which the Court defers ruling.

2. Section 1331 provides "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

pant shall furnish such information, execute such documents, and take such other action as may be necessary to enforce the rights of the plan to recover any payments made.

*Id.* at ¶ 132. The Fund asserts that it paid benefits to its members, who in turn have a right to claim recovery against Defendants under the six subrogated theories listed above.

## II. DISCUSSION

### A. *Motion to Remand*

■ The Fund asserts there is no basis for federal jurisdiction because all of the claims alleged are "quintessential state law causes of action." Memo in supp. of motion to remand at 3. The Fund asserts first that the well-pleaded complaint doctrine, and, specifically, the decision of *Custer v. Sweeney,* 89 F.3d 1156 (4th Cir.1996), bar jurisdiction. Second, the Fund asserts the existence and scope of its subrogation rights under the plan cannot be the subject of serious doubt, thus demonstrating the lack of a substantial federal question. Third, the Fund denies ERISA claims are presented.

Defendants make several arguments in favor of removal, a few of which appear meritorious. The Court can thus tailor its jurisdictional inquiry narrowly. The question resolves to whether ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), completely preempts the Fund's state law claims, or at least a portion of them, thereby providing a basis for removal jurisdiction.

■ Removal jurisdiction exists only if the Court would have had original jurisdiction over the lawsuit. The parties here lack diversity, so removal jurisdiction must exist, if at all, by the presence of a federal question. Federal question jurisdiction exists where the plaintiff's claim arises under the Constitution or other federal law.

■ As the Fund notes, pursuant to the well-pleaded complaint rule, federal question jurisdiction must be apparent from the face of the complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Thus, federal issues raised as defenses normally cannot provide a basis for removal jurisdiction. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

The Supreme Court, however, fashioned a strong exception to the well-pleaded complaint rule: "causes of action within the scope of the civil enforcement provisions of [section 1132(a) of ERISA are] removable to federal court" although they "purport[ ] to raise only state law claims." *Metropolitan Life,* 481 U.S. at 66–67, 107 S.Ct. 1542.

Turning to ERISA's civil enforcement scheme, section 1132(a)(3) provides that a civil action may be brought "by a ... fiduciary ... to obtain other appropriate equitable relief ... to enforce any provisions of this subchapter or the terms of the plan." *Id.* Federal courts have exclusive jurisdiction over actions pursuant to § 1132(a)(3).[3]

Many courts hold actions brought by a plan to enforce subrogation rights based on benefits paid by it are actions within the scope of section 1132(a)(3). *See Shannon v. Shannon,* 965 F.2d 542, 545 (7th Cir.1992)(stating "Accordingly, the Plan's intervention to enforce terms of the plan— namely, its alleged right to subrogation and reimbursement—more than likely invoked ERISA, preemption-based removal."); *see also Southern Council of Indus. Workers v. Ford,* 83 F.3d 966, 969 (8th Cir.1996); *Pacificare, Inc. v. Martin,* 34 F.3d 834, 837–38 (9th Cir.1994); *A. Copeland Enterprises, Inc. v. Slidell Mem. Hosp.,* 657 So.2d 1292, 1302 (La.1995).

---

**3.** Section 1132(e)(1) provides as follows:
Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section. *Id.*

A close analogue to these cases is *Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985 (4th Cir.1990). In *Waller* the Court of Appeals addressed whether a plan administrator could recover monies advanced to one of its plan participants after she was injured in an auto accident. While technically not a subrogation case, *see id.* at 990 n. 7, the court in *Waller* surmised the plan administrator "could have sued under § 1132(a)(3)." *Id.* at 988 n. 5. With these authorities in mind, the Court now turns to the facts at hand.

First, the very basis of the Fund's subrogation claim arises from its attempted enforcement of a plan provision. Second, while the Fund seeks damages, relief not ordinarily available under section 1132(a)(3), part of the requested relief under the subrogation claim seeks also "such other and further extraordinary equitable, declaratory and/or injunctive relief as permitted by law as necessary to assure that the Fund has an effective remedy[.]" Complaint ¶ 135(e). While the equitable and declaratory relief necessary to adjudicate the Fund's claim under the plan's subrogation provision ultimately may prove insubstantial, the Court cannot make this determination with certainty at this early stage, especially given the novel and complex nature of the dispute. Third, the Court cannot ignore the macro-economic impact of this type of litigation on plans generally and the negative implications of inconsistent adjudications that might result from disparate state regulation.

While the Court has resolved the bulk of the Fund's arguments favoring remand, the implications of *Custer* remain in the balance.[4] *Custer* is, however, readily distinguishable. In *Custer*, the Court of Appeals addressed, *inter alia*, whether ERISA preempts legal malpractice claims against attorneys representing ERISA plans. The question was answered in the negative for several reasons, including

1. The lack of a single decision supporting the proposition;

2. The logic of a positive holding would "sweep into federal court a wide range of professional malpractice claims ...," *id.* at 1167;

3. Legal malpractice claims do not affect the structure, administration or type of benefits provided by an ERISA plan; and

4. The claim did not implicate the relations among the traditional ERISA plan entities, such as the plan and the beneficiaries.

In the instant case, (1) there is helpful analogous and direct authority for the proposition in question; (2) a finding of preemption will not open the floodgates for similar subrogation claims, as these novel claims appear to still be in their infancy; (3) recovery of the substantial monies here involved, or a finding of non-recovery, will impact significantly the administration and types of benefits offered to participants or beneficiaries suffering from tobacco-related injuries, perhaps ultimately leading to their exclusion from coverage if plans cannot recoup the burdensome financial payouts involved[5]; and (4) the plan is directly involved here and the beneficiaries and participants are involved as well, even though only in indirect fashion. *Custer* is inapposite.

Accordingly, the Court finds, at a minimum, the equitable enforcement component

---

4. The Fund also asserts section 1132(a)(3) and cases decided under it are inapplicable because the Defendants are "strangers" to the plan. The Court concludes the proposed distinction is largely meaningless in the face of the textual analysis above.

5. Indeed, this novel litigation, along with related cases no doubt pending across the country, could substantially impact the way plans do business generally. While lower than many estimates, it has been postulated that "annual smoking-related healthcare costs in the ... [United States] were a staggering $50 ... [billion] a year ...." Sameena Ahmad, *Tobacco Deal in U.S. May*

*Speed BAT Into Demerger*, The Independent–London, June 24, 1997 at 22.

Perhaps sensing the potential drain down of plan assets, or the ensuing health care crisis of a non-coverage decision for tobacco-related health claims, Congress has recognized this issue in the proposed tobacco settlement pending before it. *See, e.g.,* Jonathan Gardner, *Unsettled: Tobacco Deal Causes Divisions in Congress, with States,* Modern Healthcare, Feb. 23, 1998 (stating "Another broad issue that still could snarl the settlement is the question of whether to offer the tobacco industry immunity to new lawsuits seeking reimbursement for healthcare costs.")

of the Fund's subrogation claim is completely preempted by section 1132(a)(3) and that federal question jurisdiction is present. Based upon its consideration of 28 U.S.C. § 1367, and guided by *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir.1995) and related authority, the Court further exercises supplemental jurisdiction over the Fund's remaining claims. The Fund's motion to remand is **DENIED**.

### B. Motions to Dismiss

Also pending are (1) the motion to dismiss for lack of personal jurisdiction filed by CTR; and (2) the motion to dismiss pursuant to *Rules* 12(b)(2), 12(b)(6) and 12(b)(7), *Federal Rules of Civil Procedure*, filed by TI.[6]

 The Fund requests it be given an opportunity to establish through discovery that TI and CTR engaged in tortious conduct in and/or directed to West Virginia. The request is reasonable and has been granted in other pending litigation. *See, e.g., Isner v. Healthsouth Rehab. Corp.*, No. 6:97–1125 (S.D.W.Va. Jan. 9, 1998). In determining the appropriate amount of time for discovering the issue, however, the Court must balance (1) the desire of TI and CTR to avoid excessive time and expense enduring the jurisdictional inquiry; with (2) the Fund's need for time to engage in a time consuming effort to track decades of activity by TI and CTR.

Weighing these two considerations, the Court **ORDERS** as follows:

1. The motions to dismiss for lack of personal jurisdiction are **DENIED** without prejudice; and

2. The Fund may engage in jurisdictional discovery of TI and CTR, with such discovery to be completed no later than September 1, 1998.[7]

---

6. This motion is directed primarily toward demonstrating the Court lacks personal jurisdiction over TI. Nonetheless, TI also asserts as follows:

> Moreover, the allegations of the Complaint do not state a claim against TI, and the plaintiff has failed to join necessary parties, *for the same reasons stated in the Defendants' memorandum in support of the joint motion to dismiss being filed today.* Accordingly, TI also moves for dismissal of the Complaint on these grounds, and hereby incorporates by reference the other moving defendants' memorandum in support of their joint motion to dismiss and fully joins in the arguments therein.

Mem. in supp. at 1–2 (emphasis added).

7. While this period would prove excessive in any other case, the Court notes the *general* discovery period in this complex matter will not conclude until August 1, 1999.