**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONNA ROTEN,
Plaintiff-Appellant,

v.

GALEN OF WEST VIRGINIA,

No. 97-2178

INCORPORATED, formerly known as
Humana of West Virginia,
Incorporated, a corporation; JEAN
EARLS; JANICE LEE,
Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, District Judge.
(CA-96-387-1)

Submitted: March 17, 1998

Decided: June 18, 1998

Before MURNAGHAN, WILLIAMS, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert H. Miller, II, KATZ, KANTOR, & PERKINS, Bluefield, West
Virginia, for Appellant. Bryan R. Cokeley, STEPTOE & JOHNSON,
Charleston, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Donna Roten appeals the district court's orders denying her motion for remand to the state court and granting the Appellees' motion for summary judgment. Finding no error, we affirm.

In May 1995, Roten commenced an action in West Virginia state court against her former employer, Galen of West Virginia, Inc. ("Galen"), and two Galen employees, Jean Earles and Janice Lee. The gravamen of Roten's complaint concerns her termination from employment as a registered nurse from St. Luke's Hospital, a subsidiary of Galen, after an incident in the emergency room ("ER"). Roten alleged breach of contract, conspiracy, violation of public policy, age discrimination under state law, and intentional infliction of emotional distress. During her deposition, Roten alleged she believed her dismissal was an attempt to prevent her from accruing additional retirement benefits. Based on this allegation, the Defendants removed the action to the United States District Court for the Southern District of West Virginia under 28 U.S.C. § 1446(b) (1994), contending Roten's complaint included a claim under the Employment Retirement Income Security Act ("ERISA") (29 U.S.C.A.§§ 1001-1461 (West 1985 & Supp. 1997)).

Nearly a year later, and after the Defendants moved for summary judgment, Roten abandoned her ERISA claim and moved to have the case remanded to state court. Noting that remand would be "inconvenient and prejudicial [and] also a waste of judicial resources" and the "remaining claims are neither novel nor complex," the district court denied Roten's motion.

Roten was employed by St. Luke's Hospital as a registered nurse from August 11, 1977, until May 23, 1994. Humana of West Virginia ("Humana") owned the hospital until 1992. In 1981, Roten received

2

Humana's "Employee Handbook." The handbook provided that certain "critical offenses" could be grounds for suspension and immediate termination. Critical offenses included "[t]hreatening, intimidating, or coercing patients or others," and "willful acts, or conduct detrimental to patient care or hospital operations that results in neglect or abuse of any patient." In addition, the handbook provided that employees with fifteen or more years of service must have their employment termination approved by the Chairman of the Board of Humana.

In 1992, Galen purchased St. Luke's Hospital. It issued a new employment handbook which stated that it "shall not be construed as a contract" and "employment is terminable, with or without cause, at-will of either the employee or the company." Humana's handbook did not include a statement regarding at-will employment. Human Resource Director Jean Earls sent a memorandum directing all employees to meet with their supervisor to receive the new handbook. However, Roten neither received the memorandum nor the new handbook.

On May 18, 1994, Roten was on duty in the ER when she received a telephone call from Dr. Vestich informing her that Mr. and Mrs. Blankenship would be arriving soon at the ER. Mr. Blankenship had recently undergone oral surgery and was in some distress. Vestich instructed Roten to have Mrs. Blankenship wait outside the ER until he arrived. Upon their arrival, Mr. Blankenship was taken to the trauma room and Mrs. Blankenship followed. After she took Mr. Blankenship's vital signs, Roten asked Mrs. Blankenship to wait in the hall. Mrs. Blankenship expressed a desire to stay with her husband because he was having trouble speaking. Roten purportedly stated "[i]f I let you stay in here, then I will have to let everybody out in the hall come in." According to Mrs. Blankenship, despite warning Roten that Mr. Blankenship was experiencing difficulty in speaking, Roten was rude to her and verbally forced her out of the trauma room. As Mrs. Blankenship was leaving the trauma room, Roten was laughing.

That evening, Mrs. Blankenship spoke about the incident with a paramedic on duty and the hospital's Chief Operating Officer. Sometime shortly thereafter, she wrote a letter describing the incident to Director of Nursing Janice Lee. Mrs. Blankenship thought Roten's

3

conduct showed a lack of professionalism, understanding, and compassion.

On May 19, Lee suspended Roten for three days pending the result of an investigation. After her investigation, Lee determined Roten's conduct fell within the parameters of a critical offense.[1] Lee found that Roten was rude to Mrs. Blankenship and neglected providing appropriate care to Mr. Blankenship. After Lee consulted with Chief Executive Officer Barry Papania, the decision was made to discharge Roten. Roten was given the option of resigning or being terminated. Since Roten decided not to resign she was terminated.

We first consider Roten's claim that the district court erred in denying her motion for remand. "The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." Shanagan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995). Under 28 U.S.C. § 1367 (1994), a district court may decline supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of state law;

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

> (3) the district court has dismissed all claims over which it has original jurisdiction; or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Roten contends her case raises a novel or complex issue of state law because West Virginia has not determined what constitutes reasonable notice for purposes of changing an employee's status to at-will. The district court, however, for the purposes of reaching a decision, decided the state law issue in Roten's favor. Nevertheless, it granted

_____

[1] The Humana employee handbook and the Galen employee handbook had nearly identical passages regarding critical offenses.

4

summary judgment to the Appellees. Thus, Roten was not prejudiced by the court's decision to retain jurisdiction. Moreover, given how far the case had proceeded, the court's decision was fair to both parties and served the interests of judicial economy. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Shanagan, 58 F.3d at 110. Accordingly, we find the district court did not abuse its discretion in denying Roten's motion for remand.

With regard to the breach of contract claim, Roten contends the Humana employee handbook was in effect at the time of her discharge. She further contends the handbook established a contract limiting the employer's discretion in terminating an employee. She argues the contract was breached because her conduct was not a critical offense and the decision to terminate her was not approved by the Chairman of the Board of Humana.[2] On the other hand, the Appellees contend that the Galen handbook was in effect at the time of the incident because Roten received reasonable notice of the handbook and it clearly specified that employees were at-will and could be terminated for any reason. In any event, the Appellees argue, assuming without agreeing that the Humana handbook established an employment contract, Roten's termination was not a breach of that contract.

We review the grant of summary judgment de novo. See Henson v. Ligget Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). We review the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

Under West Virginia law, at-will employment status may be changed by provisions in a handbook to a unilateral employment contract if there is a definite promise not to discharge covered employees except for specified reasons. See Hogue v. Cecil I. Walker Mach. Co.,

_____

**2** It is frivolous for Roten to contend that Humana's Chairman of the Board should have approved her termination since Humana did not own the hospital at the time of the offense. Roten's termination was approved by the highest ranking official at St. Luke's Hospital.

5

431 S.E.2d 687, 689 (W. Va. 1993). An employer may protect itself from being bound to a contract if it has the employee acknowledge that employment is at-will and can be terminated for any reason. See Suter v. Harsco Corp., 403 S.E.2d 751, 754-55 (W. Va. 1991). Furthermore, an employer may unilaterally modify the terms of employment by changing the employee's status to an at-will status upon giving reasonable notice to the employee of the change. See Hogue, 431 S.E.2d at 691. West Virginia has not determined what it considers reasonable notice.

We agree with the district court that the record before us precludes finding Roten had reasonable notice of the change in her employment status. There was no record of the memorandum Earls referred to, nor was there any record that Roten or any other employee received the memorandum or the handbook. On the other hand, we find Roten's discharge was not in breach of any provision of the Humana handbook. It was not until after Lee investigated the incident by talking with witnesses that she determined Roten's conduct was a critical offense. This finding cannot be disturbed in light of the fact that there was evidence that Roten intimidated Mrs. Blankenship and neglected her patient. Moreover, Lee's decision to terminate was made after consultation with the hospital's CEO.

Roten's remaining claims also must fail. She contends there was a conspiracy because Lee, Earls, and the CEO discussed terminating Roten. However, employees of a corporation cannot conspire with their employer or corporate principle when they are acting in their official capacities on behalf of the corporation and not for their individual advantage. See Cook v. Heck's Inc., 342 S.E.2d 453, 460 (W. Va. 1986). Roten has not offered any reason why her conspiracy claim is not governed by the exception in Cook .

Nor was Roten's discharge in violation of public policy. Her contention that she was terminated for following doctor's orders is not supported by the evidence. Clearly, she was terminated because of the manner in which she carried out the doctor's orders. Finally, her claim for damages for emotional distress must fail since it is based solely on the unsuccessful public policy claim. **3**

_____

**3** On appeal, Roten does not challenge the court's dismissal of her age discrimination claim. Therefore, this issue is waived. See Canady v. Cre-

We therefore affirm the orders and judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

_____

star Mortgage Corp., 109 F.3d 969, 973 (4th Cir. 1997). In addition, although Roten makes an argument on appeal in support of her ERISA claim, the claim is not before this court because she abandoned it in the district court.

7