# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PETER FARRELL SUPERCARS,
INCORPORATED; PETER FARRELL,
*Plaintiffs-Appellants,*

v.

GORDON MONSEN,
*Defendant-Appellee,*

and

DAVID C. PENNER; JOHN ROBERT
DUFF, JR.; MALLOY WOODBRIDGE,
LLC; MALLOY LINCOLN MERCURY,
INCORPORATED,
*Defendants.*

No. 02-2230

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-01-1073-A)

Argued: October 31, 2003

Decided: December 3, 2003

Before NIEMEYER, WILLIAMS, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

**ARGUED:** Richard Steven Sternberg, Rockville, Maryland, for
Appellants. Francis Eugene Purcell, Jr., WILLIAMS MULLEN,
McLean, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Peter Farrell Supercars and its owner, Peter Farrell, (collectively Farrell) appeal from a jury verdict in favor of Gordon Monsen, a disgruntled Farrell's customer. Farrell's original complaint stemmed from negative statements that Monsen posted on the internet.[1] It included several state claims and a federal Lanham Act claim. In response to Farrell's complaint, Monsen filed several counterclaims alleging breach of contract, fraud and violations of the Virginia Consumer Practices Act. The jury found in favor of Monsen on all claims and counterclaims. Farrell argues that the district court abused its discretion by retaining the action after it dismissed the federal claim under the Lanham Act, erred by holding that Monsen's counterclaims were compulsory and were not time barred, and abused its discretion by awarding attorney's fees to Monsen. We affirm.

### I.

The facts relevant to this appeal arise out of a souring of the business relationship between Farrell and one of his customers, Gordon Monsen. Although Farrell initially claimed that a conspiracy among a former Farrell Supercars' employee, John Duff, and some of Farrell's business competitors had damaged Farrell's reputation and business, by the time the trial began the only parties remaining in the action were Farrell and Monsen. Monsen owned a Mazda RX-7 that he took to Farrell for improvements in December 1998. Specifically, Monsen wanted Farrell to install a 500-horsepower single-engine turbo kit, perform a race-ported engine exchange, and make other minor adjustments. Monsen believed that the term "engine exchange" meant that Farrell would remove and rebuild his own engine, not that

---

[1]Farrell's complaint named multiple defendants, but by the time trial commenced only Monsen remained.

Farrell would literally exchange his engine with that from another car. An invoice dated December 21, 1998, listed the improvements Farrell would make, including the "race-ported engine-exchange." (J.A. at 83.)

Monsen picked up the car on May 14, 1999, and drove it home to Pennsylvania. Monsen experienced difficulties with the car's driveability almost immediately, and, after the engine caught fire while Monsen was out for a drive, Monsen took the car to KD Rotary, a Pennsylvania mechanic. At that time, in May 1999, KD Rotary determined that the engine fire was caused by the proximity of the engine wiring harness to the turbo charger and the absence of a heat shield. KD Rotary also found faulty wiring and soldering that fell below industry standards. Monsen continued to have difficulties with the car and returned to KD Rotary in August 2000. KD Rotary removed the turbo kit and sent it to a specialist, who replaced that turbo kit with a new one because the kit that Farrell had installed was severely worn.

Armed with a new turbo kit, Monsen began driving the Mazda RX-7 again. One week later, in September 2000, the engine simply stopped working. KD Rotary, for the first time, decided to remove the entire engine for examination. Upon inspecting the engine, KD Rotary found that the engine failed due to excessive wear. KD Rotary noticed that the vehicle identification number (VIN) on the engine did not match the VIN for Monsen's car, and the name "Ed Taylor" was found scratched on the engine. Ed Taylor had previously offered to sell his car, also a Mazda RX-7, to Monsen, but Monsen had declined because Taylor's car had substantially more miles than Monsen's. Monsen thus believed that Farrell had switched Taylor's engine, which had over 100,000 miles on the odometer, for his, which had only 25,000 miles.

In response to this perceived wrong, Monsen began posting messages regarding his business transactions with Farrell on an internet bulletin board for RX-7 enthusiasts. For example, Monsen wrote on June 1, 2001:

> [I] strongly recommend that whoever is considering peter
> feral talk to any of the many people that peter has mistreated

and ripped off by selling them retitled out-of-state cars that anything could have happened to and virginia still gives a good clean title for, or charging for work not done as expected.

(J.A. at 52.)

Farrell countered by bringing this action on July 9, 2001, in the United States District Court for the Eastern District of Virginia, alleging violations of the Lanham Act, 15 U.S.C.A. § 1125 (West 1998 & Supp. 2003), and seven state common law claims for defamation and tortious interference with a business relationship.[2] Monsen counterclaimed for breach of contract, fraud and violations of the Virginia Consumer Practices Act (VCPA), Va. Code Ann. § 59.1-200 *et seq.* (Michie 2001). The district court dismissed Farrell's Lanham Act claim on April 25, 2002, principally because Monsen was not in competition with Farrell and did not disseminate his statements as advertisements. A jury trial commenced on June 11, 2002. On that date, Farrell took a non-suit as to the former employee John Duff, leaving only Monsen as a defendant. The jury found for Monsen on all of Farrell's counts, and also found for Monsen on all of his counterclaims. Accordingly, the jury awarded Monsen $10,000 for breach of contract, $5,000 for fraud, $5,000 in punitive damages, and $5,000 for the VCPA violations. The VCPA award was statutorily trebled to $15,000. After denying Farrell's motion for a new trial, the district court awarded Monsen $55,823.50 in attorney's fees, limiting the fee award to those fees incurred on the VCPA claim. This timely appeal followed. We possess jurisdiction to hear the appeal under 28 U.S.C.A. § 1291 (West 1993).

II.

On appeal, Farrell argues that the district court abused its discretion by retaining the action after it dismissed the Lanham Act claim, erred in ruling that Monsen's counterclaims were compulsory and timely, and abused its discretion in awarding Monsen attorney's fees.[3] We address each of these arguments in turn.

---

[2]Farrell's complaint named other defendants who, by virtue of settlements and non-suits, are not relevant to this appeal.

[3]Farrell also complains of two errors regarding the jury instructions and verdict form. We find both to be without merit and affirm the district court's findings and conclusions based on its reasoning.

*Supplemental Jurisdiction*

Farrell first argues that the district court abused its discretion by refusing to dismiss the remaining state law claims after it dismissed the sole federal claim, the Lanham Act claim.[4] We disagree. District courts have supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the federal claim. 28 U.S.C.A. § 1367(a) (West 1993). A district court, however, "may decline to exercise supplemental jurisdiction over a claim" when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(b)(3) (West 1993). We review a district court's actions under § 1367 for abuse of discretion. *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995).

Farrell believes that, because the federal claim was dismissed before trial, the district court abused its discretion by retaining the numerous state law claims. The doctrine of supplemental jurisdiction is one of flexibility, and there is no "mandatory rule" requiring dismissal when the federal claim is disposed of before trial. *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Likewise, in *Shanaghan*, we noted that district courts enjoy "wide latitude" when deciding whether to exercise supplemental jurisdiction in an action. *Shanaghan*, 58 F.3d at 110. We instructed district courts to consider the "convenience and fairness to the parties, the existence of any

---

[4]In the alternative, Farrell argues that the district court never had jurisdiction over the action because the federal claim was a sham. In fact, at argument Farrell's appellate counsel made the somewhat unusual suggestion, with his client's blessing, that his client should be sanctioned for his trial counsel having filed such a spurious claim. Although this strategy may have been a clever attempt to fall within the purview of the safe-harbor provision of Federal Rule of Civil Procedure 11 and thus relieve Farrell of the adverse jury verdict, we must reject it because Farrell's complaint, on its face, stated a Lanham Act claim against the defendants that provided federal question jurisdiction pursuant to 28 U.S.C.A. § 1331 (West 1993) and original jurisdiction pursuant to 28 U.S.C.A. § 1338 (West Supp. 2003). Because multiple defendants, some of whom were competitors of Farrell, were dismissed before the Lanham Act claim was disposed of by the district court, the fact that Farrell did not state a claim under the Lanham Act against Monsen, standing alone, does not dictate a finding that the Lanham Act claim was a sham when filed.

underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* Applying those factors in *Shanaghan*, we held that a district court was not required to dismiss a diversity action where, after the action began, one of the claims was dismissed, leaving the claimed damages below the amount in controversy requirements. We did caution, however, that a court must inquire into "whether plaintiff was consciously relying on flimsy grounds to get into federal court." *Id.* at 112.

In response to Farrell's motion for a new trial, the district court explained its decision to retain the remainder of the case, noting "the parties had completed substantial pre-trial preparation,"[5] and the court "was already familiar with the facts and issues." (J.A. at 168.) Therefore, the court continued, "dismissal at that late date therefore would not have been fair to the parties, and also would not have been an efficient use of judicial resources." (J.A. at 168.)

The district court's decision to retain jurisdiction over the state law claims was not an abuse of discretion. The district court followed the procedure outlined in *Shanaghan*, taking into consideration the number of state law claims remaining as well as the length of time the parties had already spent preparing for trial. The district court also appropriately considered its familiarity with the parties and issues as a factor favoring retention of the state law claims. The Lanham Act claim was not disposed of until the eve of trial,[6] almost eight months after the complaint was filed, and the remaining state law claims, although numerous, had been developed and refined throughout the pretrial period. The district court deserves "wide latitude" in making its determination under § 1367, *see Shanaghan*, 58 F.3d at 110, and did not abuse that discretion by retaining jurisdiction.

---

[5]For example, the parties had filed numerous motions, appeared four times before the district court and numerous times before the magistrate judge, completed discovery and filed witness lists with the court by the time the Lanham Act claim was dismissed.

[6]Although the trial did not commence until June 11, 2002, it was scheduled to begin in April 2002, but was stayed so that Farrell could attempt to serve notice on one of the co-defendants.

Furthermore, we would be remiss if we failed to note the curious procedural posture of this appeal. Typically in supplemental jurisdiction cases, the plaintiff is complaining because the district court failed to retain his supplemental state law claims. Here, Farrell, the plaintiff, is complaining because the district court in which he filed his federal and state law claims used its discretion to retain the state law claims after dismissing the federal claim. Farrell now claims that he used the Lanham Act claims as a "hook" with which to bring the state law claims under federal jurisdiction. Under these circumstances, we cannot help but view Farrell's post-trial actions as those of a somewhat sore loser who is upset that his chosen forum rendered an unfavorable verdict.

Given the district court's careful consideration of the factors listed in *Shanaghan*, and the wide latitude the district court possesses when acting under § 1367, we cannot say that the district court abused its discretion in choosing to retain the state law claims after dismissing the Lanham Act claim.[7]

### *The Counterclaims*

Farrell's next contention is that the district court erred in finding that Monsen's counterclaims were compulsory within the meaning of Federal Rule of Civil Procedure 13(a). That rule requires a party to state "as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). If a counterclaim is compulsory, a district court requires no independent jurisdictional basis to entertain it. Farrell argues that Monsen's counterclaims were not compulsory and, because there was no independent jurisdictional basis for them, those claims should have been dismissed.

We review a district court's finding that a counterclaim is compulsory de novo. *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988).

---

[7]Because we find that the district court did not abuse its discretion in retaining the state law claims, we offer no opinion as to whether the district court also possessed diversity jurisdiction under 28 U.S.C.A. § 1332 (West 1993 & Supp. 2003).

In *Sue & Sam Mfg. Co. v. B-L-S Const. Co.*, 538 F.2d 1048, 1051-1053 (4th Cir. 1976), we identified four inquiries that help in determining whether a counterclaim is compulsory: (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim? "A court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Painter*, 863 F.2d at 331. Instead, the test works "less like a litmus, more [like] a guideline." *Id.* Of course, the "underlying thread" to each inquiry is "evidentiary similarity," and "where . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory." *Id.* at 331-332.

With this framework in mind, we turn to the instant case. The district court, in reviewing Farrell's motion to dismiss the counterclaims, determined that each inquiry weighed in favor of finding that the claims are compulsory. We agree. The key inquiry, as we made clear in *Painter*, is the evidentiary similarity of the claims. Here, Monsen's counterclaims necessarily involve the same evidence as Farrell's original claims. Monsen is alleging that Farrell performed poor work on his automobile. Farrell is suing Monsen for statements made in response to that work. The evidence involving both claims would necessarily center on the customization work performed by Farrell. *Cf. Albright v. Gates*, 362 F.2d 928, 929 (9th Cir. 1966) (holding that a counterclaim for fraud was compulsory to a claim for slander because there was "sufficient identity or overlapping of the events of the factual background").

There is a logical relationship between the claims because they "essentially ar[o]se from the souring of [the parties'] business relationship." *Banner Indus. of N.Y., Inc. v. Sansom*, 830 F.Supp. 325, 328 (S.D. W. Va. 1993) (finding a counterclaim for breach of contract and fraud to be compulsory to a claim of defamation). The issues of fact and law are similar because "essentially the same burden" would exist in the breach of contract and defamation claims. *Sun Shipbuilding & Dry Dock Co. v. Virginia Elec. & Power Co.*, 69 F.R.D. 395, 397

(E.D. Pa. 1975) (seminal case finding that counterclaims for breach of contract are compulsory to claims of defamation).

Because we have stated that evidentiary similarity is the most important inquiry, and because there is both evidentiary similarity and a logical relationship between Farrell's original claims and Monsen's counterclaims, we find that the district court was correct in holding that Monsen's counterclaims were compulsory within the meaning of Rule 13(a). Likewise, we find no error in the district court's reasoned analysis of the res judicata and overlap-of-facts-and-issues inquiries.

Farrell argues in the alternative that Monsen's counterclaims are time barred. It is undisputed that the invoice for Monsen's RX-7 is dated December 1998, and that the work was completed on Monsen's car by May of 1999. Farrell filed his complaint in July 2001, more than two years after the alleged breach of contract and fraud. The district court recognized that Monsen's counterclaims were filed more than two years after the claims accrued but submitted to the jury the question of whether application of the discovery rule made Monsen's counterclaims timely.

We review the district court's determination and application of state law de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991). The statute of limitations for fraud and violations of the VCPA is two years.[8] Va. Code Ann. § 59.1-204.1 (Michie 2001). Virginia law generally states that actions accrue at the time of injury, not the time of discovery. Va. Code Ann. § 8.01-230 (Michie 2000). An exception exists for actions in fraud;[9] such claims accrue when the fraud is discovered or when it should have been discovered by the exercise of due diligence. Va. Code Ann. § 8.01-249.1 (Michie 2000). The question of whether a party used due diligence to discover the fraud "must be ascertained by an examination of the facts and circumstances unique to each case." *STB Mktg. Corp. v. Zolfaghari*, 393 S.E.2d 394,

---

[8] The breach of contract counterclaim was timely because Virginia's statute of limitations for breaches of contract is five years. Va. Code Ann. § 8.01-246.2 (Michie 2000).

[9] The VCPA claim is for fraudulent misrepresentation and thus also covered by this narrow exception. Va. Code Ann. § 59.1-200(A)(2) (Michie 2001).

397 (Va. 1990). The district court did not err in allowing the jury to determine whether Monsen had used due diligence to find that Farrell literally had switched his engine for another. While it is true that Monsen was displeased with Farrell's work from the time he received the car, Monsen had no reason to suspect that his engine had been replaced. Monsen was diligent and continued to have the car inspected by other mechanics. Monsen did not sit on his rights for two years but kept searching for answers to his car problems until September 2000, when KD Rotary for the first time found that Monsen's engine had been replaced with Ed Taylor's. The district court correctly ascertained Virginia law and did not err in applying the discovery rule.

*Attorney's Fees*

Farrell also disputes the district court's award of attorney's fees to Monsen's two attorneys,[10] arguing both that Monsen failed to introduce evidence that the fees charged were reasonable, and that the award violated the Virginia Code. We review a district court's award of attorney's fees for abuse of discretion. *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 320 (4th Cir. 2003). Because the district court granted fees pursuant to a Virginia statute,[11] we look to Virginia's standards for determining if the fee award is reasonable.

In Virginia, counsel must "establish, as an element of the attorney's *prima facie* case, that the fees charged . . . are reasonable." *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd.*, 480 S.E.2d 471, 473 (Va. 1997). When determining if the party has met that burden, "the fact finder should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances." *Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 335 (Va. 1991). A court should "weigh the testimony of attorneys as to the value of the services, by reference to their nature, the time occupied in their performance, and other attend-

---

[10]Monsen's counsel was acting pro hac vice, and the district court rules require local counsel be retained in those situations. E.D. Va. Local R. 83.1(D).

[11]The VCPA authorizes an award of attorney's fees to prevailing parties. Va. Code Ann. § 59.1-204(B) (Michie 2001).

ing circumstances, and by applying to it their own experience and knowledge of the character of such services." *Holmes v. LG Marion Corp.*, 521 S.E.2d 528, 533 (Va. 1999) (quoting *Beale v. King*, 132 S.E.2d. 476, 478-79 (Va. 1963)). Expert testimony regarding the reasonableness of the fees is not required in every case. *See Tazewell Oil Co. v. United Va. Bank*, 413 S.E.2d 611 (Va. 1992) (holding affidavit and billing records sufficient); *Seyfarth, Shaw*, 480 S.E.2d at 473 (holding testimony regarding complexity of the work sufficient).

Monsen's counsel submitted detailed billing records and testified as to both attorneys' billing practices. The district court carefully reviewed the records, and rejected almost one-third of the fees as duplicative or unrelated to the VCPA claim. The district court also relied on its own experience, noting Monsen's chief counsel possessed "apparent trial experience." (J.A. at 185.) Regarding the reasonableness of the rate charged by Monsen's local counsel, the district court found the rate well within "the rates charged for local counsel services in the metropolitan District of Columbia area." (J.A. at 185-186.) The district court did not abuse its discretion in deciding to award attorney's fees because it carefully followed the dictates of the Virginia Supreme Court and conducted a detailed analysis of the billing records before determining that the rates charged were reasonable.

Farrell also argues that the award violates the Virginia Code because the Code prohibits an award of fees to more than one attorney. Section 17.1-625 states, "[a]lthough the party recovering may have had more than one attorney, only the fees of one shall be taxed in the same court." Va. Code Ann. § 17.1-625 (Michie 2003). Virginia courts have yet to rule on the meaning of this section, but we believe that, *assuming arguendo* that the section prohibits more than one attorney from receiving a fee award, the district court followed the legislature's intent in this action. The district court removed all of the duplicative fees from the lodestar when calculating the award. Thus, by its actions, the district court was, in fact, ensuring that only one attorney's worth of work was being credited in the fee award. Because the district court followed the clear intent of the Virginia Code, we do not find the award of attorney's fees to be an abuse of discretion.

### III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.