**Florhline A. PAINTER,**
**Plaintiff–Appellant,**

v.

**Larry R. HARVEY, Defendant–Appellee.**

and

**The Town of Luray Police Department; Jerry M. Schiro, Chief of Police; The Town of Luray; The Luray Town Council, Defendants.**

**Florhline A. PAINTER,**
**Plaintiff–Appellee,**

v.

**Larry R. HARVEY,**
**Defendant–Appellant.**

and

**The Town of Luray Police Department; Jerry M. Schiro, Chief of Police; The Town of Luray; The Luray Town Council, Defendants.**

Nos. 87–2203(L), 87–2210.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1988.

Decided Dec. 19, 1988.

---

Deborah C. Wyatt (Gordon & Wyatt, Charlottesville, Va., on brief), for plaintiff-appellant.

David A. Penrod (Hoover, Hoover, Penrod & Davenport, Harrisburg, Va., on brief), for defendant-appellee.

Before RUSSELL, HALL and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

In this case we must determine if the district court properly invoked its ancillary subject matter jurisdiction to entertain a state libel counterclaim that arose in response to a federal action under 42 U.S.C. § 1983. Plaintiff Painter alleged that defendant Harvey violated her constitutional rights while arresting her for driving under the influence in November, 1984. Defendant counterclaimed, asserting that plaintiff slandered and libeled him by filing a fabricated complaint about the circumstances of her arrest with the Town Council of Luray, Virginia, and by distributing her complaint to the local news media. Following a jury verdict in defendant's favor, plaintiff moved to dismiss defendant's counterclaim for lack of subject matter jurisdiction. The district court held defendant's counterclaim compulsory because it involved substantially the same evidence as plaintiff's claim, 673 F.Supp. 777. It also denied defendant's motion for attorney's fees. We affirm both rulings.

I.

At 12:45 a.m. on the morning of November 9, 1984, police officer Larry Harvey stopped a vehicle driven erratically by plaintiff Florhline Painter in the Town of Luray, Virginia. Both plaintiff and a companion appeared intoxicated and Harvey called for additional assistance. After the assistance arrived, Harvey placed Painter under arrest for driving while intoxicated, handcuffed her, and, with the help of another officer, placed her in the back seat of his patrol car. A plastic shield separated the front and back seats.

Harvey transported Painter at once from the scene of the arrest to a local jail. Harvey's car was preceded and followed by two other police cars and was never out of their sight. When Painter arrived at the jail, her blouse was unbuttoned, one breast was exposed, and her shoes, panty hose, and underpants were removed. She claimed Officer Harvey had raped her and initially refused to cover herself when requested to do so.

On April 9, 1985, Painter appeared before the Luray Town Council to summarize her version of the events of her arrest and to file a formal complaint against Officer Harvey. She also issued a prepared written statement to a reporter from the local newspaper, the *Page News and Courier*. The statement contained the allegation that Harvey had "jerked me out of my car, tore my blouse, put marks on my breast, and I also sustained a head and neck injury from his excessive force he used...." Excerpts from the complaint were published in the *Page News and Courier* on April 12, 1985.

Painter filed suit in federal district court in February, 1985. She alleged that Harvey lacked probable cause to arrest her and

had used excessive force during her arrest, all in violation of 42 U.S.C. § 1983.

Harvey counterclaimed against Painter for defamation. He alleged that Painter had falsely claimed that she was molested or raped during the November, 1984 arrest, and had submitted a false summary of the circumstances of her arrest to the Luray Town Council the following April. Harvey's version of events was starkly at variance with that of Painter. He testified that when he and Painter arrived at the jail, he noticed that Painter had opened her blouse, exposed one of her breasts, and had removed her shoes, panty hose, and underpants. Jerry Shiro, the former chief of police of the Luray Police Department, stated that the *Page News and Courier* article had created serious embarrassment for Harvey with the public, his fellow police officers, and members of the Town Council.

The case was tried before a jury. The jury found for Harvey on Painter's § 1983 claim. The jury also found in Harvey's favor on the defamation counterclaim, awarding compensatory damages of $5,000.00 and punitive damages of $15,-000.00. Painter moved to set aside the verdict on the grounds that the court lacked subject matter jurisdiction over the counterclaim. Harvey moved for attorney's fees. The district court denied both motions. Painter appeals and Harvey cross-appeals.

## II.

The sole question on Painter's appeal is the nature of Harvey's counterclaim. If the counterclaim is compulsory, it is within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required. If the counterclaim is permissive, however, it must have its own independent jurisdictional base. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1409 (1971 and 1988 Supp.). Since Painter and Harvey are both citizens of Virginia, and Harvey asserts no federal question, the designation of the counterclaim is critical.

In defining a compulsory counterclaim, Fed.R.Civ.P. 13(a) provides in pertinent part that:

A pleading shall state as a counterclaim any claim which at the time of serving the pleadings the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

Fed.R.Civ.P. 13(b), in contrast, provides that:

A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

We hold that defendant's counterclaim is compulsory and that the district court properly exercised jurisdiction over it.

## III.

In *Sue & Sam Mfg. Co. v. B–L–S Const. Co.*, 538 F.2d 1048 (4th Cir.1976), this circuit suggested four inquiries to determine if a counterclaim is compulsory: (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim? *Id.* at 1051–1053. A court need not answer all these questions in the affirmative for the counterclaim to be compulsory. *Id.* at 1053; *see also Hospital Building Co. v. The Trustees of Rex Hospital*, 86 F.R.D. 694, 696 (E.D.N.C.1980). Rather, the tests are less a litmus, more a guideline.

Although the tests are four in number, there is an underlying thread to each of them in this case: evidentiary similarity. The claim and counterclaim both involved witness testimony directed toward the same critical event. Indeed, in applying the four *Sue & Sam* tests, the district court invariably returned to the same place. As to inquiry (1), the district court noted that: "The central issue in both the

claim and counterclaim is identical: What transpired during Mrs. Painter's arrest on November 9, 1984? The jury, in essence, was faced with irreconcilably conflicting evidence and was required to choose which version to accept or reject."

As to inquiry (2), the district court stated: "Examining the facts here, one finds that the jury verdict against Mrs. Painter on her § 1983 claim necessarily determined the issue of what happened during her arrest. Thus, in subsequent state action she could well face an issue preclusion bar as to relitigating those facts."

Inquiry (3) is explicitly evidentiary in nature. Not surprisingly, the district court concluded: "All of the witnesses, except the newspaper editor and witnesses testifying to damages, limited their testimony to a single factual issue—what transpired during Mrs. Painter's arrest on November 9, 1984? It is hard to imagine a case in which the evidence bearing on the two claims is so closely identical."

With regard to inquiry (4), the district court was once again led to the differing tales of the same evening underlying both claim and counterclaim. It concluded that: "In short, the truth of Officer Harvey's version of the events of November 9, 1984, is the central issue of fact in both the claim and counterclaim. They are inextricably and logically connected."

Where, as here, the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory. The "same evidence" test thus accomplishes the purposes of Fed.R.Civ.P. 13(a), because the "very purpose of making certain types of counterclaims compulsory is to prevent the relitigation of the same set of facts." 6 C. Wright & A. Miller, *supra*, at § 1410. This rationale for ancillary jurisdiction over compulsory counterclaims, moreover, parallels the rationale for pendent jurisdiction—namely, that where different claims of law "derive from a common nucleus of operative fact," the justification for the exercise of federal jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers of America*

*v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). Holding counterclaims compulsory avoids the burden of multiple trials with their corresponding duplication of evidence and their drain on limited judicial resources. *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). The "same evidence" test simply makes these concerns the focal point of its determination by requiring claims and counterclaims which involve the same evidence to be heard in a single proceeding.

Although the district court appeared to apply what in essence was the "same evidence test" in this case, courts have properly cautioned that this test should not be the exclusive determinant of compulsoriness under Fed.R.Civ.P. 13(a) because it is too narrow a definition of a single transaction or occurrence. Some counterclaims may thus be compulsory even though they do not involve a substantial identity of evidence with the claim. 6 C. Wright & A. Miller, *supra*, at § 1410; *Schoeman v. New York Life Insurance Co.*, 726 P.2d 1, 6 (Wash.1986). A counterclaim may still arise from the same "transaction or occurrence", as a logically related claim even though the evidence needed to prove the opposing claims may be quite different. *See, e.g., Eastern Transportation Co. v. United States*, 159 F.2d 349 (2d Cir.1947) (claim for earned freight; compulsory counterclaim for cargo damage). Here, however, the claims both bear a logical relationship and an evidentiary similarity, and the problems of a divergence between the last two inquiries under *Sue & Sam* are not present.

## IV.

The foregoing purposes of Fed.R.Civ.P. 13(a) lead us to reject Painter's assertion that Harvey's libel counterclaim was merely permissive. We address plaintiff's arguments in turn.

■ Plaintiff argues that defendant's counterclaim should be found permissive because plaintiff's claim involves federal law and defendant's counterclaim state li-

bel law. The fact that the counterclaim may be one of state law, however, says nothing about its logical relationship to the federal claim or to the evidentiary overlap between them. Where a plaintiff asserts a claim based on federal law, a counterclaim based on state law may be adjudicated as a matter of ancillary jurisdiction so long as the counterclaim arises from the same transaction. *See Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1359 (5th Cir.1979).

■ Similarly, we reject plaintiff's assertion that the counterclaim is permissive because the events of November 9, 1984 became relevant to the libel counterclaim only when plaintiff responded to that counterclaim with an affirmative defense of truth. The affirmative defense, however, followed the counterclaim much as night follows day, and indeed plaintiff could not have withheld the affirmative defense without repudiating the version of events as set forth in her original complaint. Since the counterclaim itself was not subject to the federal face of the complaint rule, the status of the counterclaim cannot be made to depend on the fact that issue is joined over the events of November 9, 1984 only by way of an affirmative defense to it. To decide otherwise would be to construct an artificial barrier to the comprehensive purposes of Rule 13(a).

We also cannot accept plaintiff's argument, based on the second inquiry under *Sue & Sam,* that defendant's counterclaim should be permissive because a withheld counterclaim would face no res judicata bar in a subsequent state proceeding. Assuming that Harvey's counterclaim might still be brought in state court, the res judicata test cannot be the controlling one. If the limits of the compulsory counterclaim are no broader than res judicata, then Fed.R. Civ.P. 13(a) would be superfluous. Commentators and courts have recognized the difficulty of using a res judicata test to distinguish between permissive and compulsory counterclaims, *see* 6 C. Wright & A. Miller, *supra,* at § 1410; *Columbia Pla-*

*za Corporation v. Security National Bank,* 525 F.2d 620, 624 n. 24 (D.C.Cir. 1975), and, in fact, the doctrines of preclusion have been adapted to the requirements of Fed.R.Civ.P. 13(a). *See* 6 C. Wright & A. Miller, *supra,* at § 1410. That is to say, "absent a compulsory counterclaim rule, a pleader is never barred by res judicata from suing independently on a claim that he refrained from pleading as a counterclaim in a prior action." *Id.*

For much the same reasons, we find unpersuasive plaintiff's assertion that the burden of multiple trials in federal and state courts is not implicated here. Plaintiff argues that an adverse verdict on her § 1983 claim would collaterally estop her on the issue of liability in libel in state court and restrict any future state trial to the matter of damages. Although the danger of multiplicity of litigation may be lessened by issue preclusion, the use of issue preclusion is never analogous to having the same judge or jury try the entire cause. To require the defendant to pursue a state libel claim independently of this action, in which the only determination to be made would center on damages, is to ignore the value of having the same factfinder resolve all issues with an eye for consistency and an appreciation for the total context of the case.

Contrary to plaintiff's assertion, this case does not fall within the narrow line of exceptions to Fed.R.Civ.P. 13(a) holding that a counterclaim "which stems from the filing of the main action and *subsequent* alleged defamations is not a compulsory counterclaim...." *Harris v. Steinem,* 571 F.2d 119, 124 (2d Cir.1978) (emphasis in original). We need not address whether *Harris* was properly decided because we believe it is distinguishable from the facts of this case. In *Harris,* the libel counterclaim related to publications which arguably were privileged as court filings. The *Harris* court thus regarded the libel counterclaim as little more than a claim of malicious prosecution which was "premature prior to the determination of the main action." *Id. quoting* 3 Moore's Federal Practice ¶ 13.13 at 13–308 (2d ed. 1974). Here, by contrast, the focus of the counterclaim

was on Painter's activities before the Luray Town Council, which are distinct and apart from a filing of a lawsuit.[1] To extend the *Harris* rule to this different set of facts would vitiate the general premise of Fed.R.Civ.P. 13(a)—that another logically related claim need only have accrued by the time a responsive pleading is filed in the first action, not by the time of the filing of the complaint. In addition, it would ignore the general purpose of Fed.R.Civ.P. 13(a)—to have all related actions heard at one time.

Plaintiff argues finally that holding this counterclaim to be compulsory will impermissibly chill the prosecution of actions under 42 U.S.C. § 1983. This argument is unpersuasive for several reasons. First, Fed.R.Civ.P. 13(a) is neutral in its terms and does not suggest that the characterization of counterclaims should be made to depend upon the type of cause of action alleged in the complaint. Second, the "substantial evidence" test employed to find this counterclaim compulsory is, if anything, underinclusive in its application. As we have noted, counterclaims that are logically related to the claim but require different evidence to prove, may also be compulsory where considerations of economy and fairness require, as they do here, that the controversy be settled in a single lawsuit.

### V.

On cross-appeal, defendant challenges the district court's denial of attorney's fees which defendant sought to recover upon the unsuccessful conclusion of plaintiff's 42 U.S.C. § 1983 action. Such fees are awarded only in the unusual circumstances where a case is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Company v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); *see also Hughes v. Rowe*, 449 U.S.

5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (*Christianburg* standard applicable in § 1983 actions). Whether to impose such sanctions is best left to the discretion of the district court. We discern no abuse of discretion in this case. The judgment of the district court is

AFFIRMED.

---

1. Although not addressed below or argued on appeal, the privileged nature of the communications before the Town Council may have been relevant as a defense to the libel claim. It is much less relevant, however, to the characterization of the counterclaim as compulsory or to the question of whether a libel counterclaim constitutes an artfully pleaded count of malicious prosecution. Similarly, the status of a libel counterclaimant as a public figure, as Gloria Steinem may have been in *Harris,* is germane as a defense to the counterclaim but not to the question of whether the counterclaim itself is permissive or compulsory.