WILSON, J. (dissenting).
I begin with a proposition as to which I believe the plurality and I agree: New York is a "permissive counterclaim" jurisdiction, so that, had Allianz Risk Transfer AG's initial lawsuit been filed in New York State court, without a federal securities law claim, Paramount Pictures Corporation would not have been required to file as a counterclaim thereto its claim that Allianz breached the contract's covenant not to sue. New York's legislature has adopted a different rule from rule 13(a) of the Federal Rules of Civil Procedure, driven by its judgment about the efficiency of the two different approaches (see CPLR 3019 ). In that regard, there is no right answer: the Federal Rules rest on a rebuttable presumption that trying all claims-including claims the defendant may have against the plaintiff-in a single action is the most efficient way to proceed, even if that complicates, slows, and enlarges that lawsuit, because there will be no second lawsuit. New York, like several other states (including Maryland, Pennsylvania, and Connecticut), has made a different calculation, permitting defendants to choose not to litigate counterclaims as part of the initial action, so that the initial action may proceed more simply and expeditiously. The second action may be obviated because of settlement or substantially *754 reduced or eliminated by operation of issue preclusion arising from the first action. Indeed, the procedural difference between New York's permissive counterclaim rule and the Federal Rules is not stark. Despite the requirement of rule 13(a), federal district courts often end up in the same place that a New York court would because of Federal Rules of Civil Procedure rule 42(b), which expressly permits federal district courts to bifurcate any counterclaims from the plaintiffs' claims.[1] Thus, the real difference in procedure is who (the court on motion of ***88 a party, rather than the defendant) makes the decision to try separately a counterclaim arising from the same transaction or occurrence. From that starting point, I believe the plurality has made two wrong turns, either of which, if righted, would independently produce a different result here.
First, Semtek Int'l Inc. v. Lockheed Martin Corp. (531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 [2001] ) holds that a federal court sitting in diversity must apply the res judicata rules of the forum state. Taylor v. Sturgell (553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 [2008] ) holds that a federal court vested with federal question jurisdiction must apply federal common-law res judicata rules. Neither case decides what a federal court should do when both federal and state-law claims are present. The plurality concludes that, so long as a federal court's judgment is entered in an action that raised a federal claim, the preclusive effect of all claims disposed of in that lawsuit must be determined by federal res judicata law. The Supreme Court has not directly decided that question, but I believe the Supreme Court would decide the question differently, holding that the claim-preclusive effect of each claim in the federal action should be determined by the res judicata principles of the jurisdiction whence each claim sprung.[2] The legal source of each claim, not the source of the federal court's jurisdiction, should determine the applicable claim-preclusion law. Here, under my approach, the claim-preclusive effect of the dismissal of Allianz's federal securities law claim would be determined by federal res judicata principles, *755 but the claim-preclusive effect of the dismissal of Allianz's New York State law claims would be determined by New York's res judicata principles. Paramount's claim would not be barred by New ***89 York's law of res judicata, because it would not nullify the original judgment or impair the rights of the parties established in the prior action.
Second, my above disagreement with the plurality's conclusion does not matter in this case, because Paramount's counterclaim for breach of the covenant not to sue is not barred by federal or New York claim-preclusion doctrine. The plurality misinterprets federal claim-preclusion law and reaches the wrong result in its application. Neither the Supreme Court nor the Federal Courts of Appeals have decided whether a covenant not to sue can be separately litigated in state court as a matter of federal res judicata. In federal courts, it is rule 13(a) -not federal claim preclusion doctrine-that bars litigants from separately filing what should have been a compulsory counterclaim. rule 13(a) is a procedural rule expressing the policy choice of the federal courts as to how best to operate efficiently, and cannot impose that choice on state legislatures that have made a different judgment. Federal res judicata principles would not bar subsequent litigation in state court unless that litigation would nullify the original judgment or impair the rights of the parties established in the first action, neither of which is true here.
I.
A.
As the plurality explains, the preclusive effect of a judgment of a federal court is determined by federal common law, which, in turn, is ultimately pronounced by the United States Supreme Court (see Semtek, 531 U.S. at 503, 121 S.Ct. 1021 ). In Semtek, the Supreme Court directed that federal courts sitting in diversity (that is, when no federal question is present) must apply the preclusion law of the state in which the federal court sits ( id. at 508, 121 S.Ct. 1021 ). Where a lawsuit is based on the violation of the federal constitution or a federal statute, "federal courts participate in developing 'uniform federal rule[s]' of res judicata, which [the United States Supreme Court] has ultimate authority to determine and declare" ( Taylor, 553 U.S. at 891, 128 S.Ct. 2161 ). Semtek involved state-law claims only; Taylor involved a federal claim only. Neither case explicitly states how the claim-preclusive effect should be determined when, as here, a case involves both federal and state-law claims.
The plurality's answer to that question is that "where federal preclusion principles would operate to preclude a claim-and ***90 state law principles would yield a conflicting outcome-the 'federal courts' interest in the integrity of their own processes' justifies the displacement of New York law," citing Semtek (plurality op. at 71, 73 N.Y.S.3d at 477, 96 N.E.3d at 742).[3] In *756 Semtek, the Supreme Court illustrated the type of incompatibility that might require resort to federal res judicata principles-dismissal of a lawsuit with prejudice for "willful violation of discovery orders," because allowing the plaintiff to re-file in state court would implicate "federal courts' interest in the integrity of their own processes" (see Semtek at 509, 121 S.Ct. 1021 ). Nothing remotely like that comes into play simply because a state, as here, has made a choice that differs from the choice made in rule 13(a). There is no question that rule 13(a) would bar the separate filing in federal court of a claim that should have been filed as a compulsory counterclaim, but there is no incompatibility-or even federal interest implicated-by a state's choice to allow that claim to be filed in state court.
The plurality's answer is not the answer I predict the Supreme Court will eventually give. Instead, Semtek's rationale requires us to analyze the claim-preclusive effects of the federal claim and the state law claims separately. In the present case, the claim-preclusive effect of the judgment dismissing the federal 10b-5 claim should be determined by the "uniform federal rules of res judicata" ( Taylor, 553 U.S. at 891, 128 S.Ct. 2161 [internal quotation marks and brackets omitted] ). The claim-preclusive effect of the judgment as to the state law fraud and unjust enrichment claims, however, should be determined by New York's rules of res judicata.
In Semtek, the Court held that the claim-preclusive rule of the forum state should be applied in diversity cases:
***91 "Since state, rather than federal, substantive law is at issue, there is no need for a uniform federal rule. And indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court. This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits"
( 531 U.S. at 508, 121 S.Ct. 1021.) With that rationale in mind, it becomes important to recall that the claim-preclusive effect of any judgment is determined by the claims in which the merits were actually adjudicated. Indeed, Semtek held that despite Federal Rule of Civil Procedure rule 41(b)'s specification that an involuntary dismissal operates as an "adjudication on the merits," claim-preclusive effect is not given to all claims nominally disposed of "on the merits," but only to those "in which the merits of [a party's] claim are in fact adjudicated [for or] against the [party] after trial of the substantive issues" ( id. at 502, 121 S.Ct. 1021 ). Thus, if a complaint contains two causes of action, and a court dismisses one without prejudice (or in some other manner in which the merits are not decided) and adjudicates the other to conclusion, only the second claim will have preclusive effect, not the first. If the first is a claim based on federal law, and the second a claim based on state law, Semtek's rationale would require the claim-preclusive effect of the state law claim to be determined by state-law res judicata principles, not federal. Taking the example one step further, if both the federal and state-law claims are adjudicated on the merits, the claim-preclusive effect of the federal claim would be determined by federal common law, as per Taylor, but the claim-preclusive effect of the state-law claim would be determined by state res judicata principles, as per Semtek.
*757 As was true in Semtek,"any other rule would produce the sort of 'forum-shopping ... and ... inequitable administration of the laws' that Erie [R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ] seeks to avoid ... since filing in, or removing to, federal court would be encouraged by the divergent effects that the litigants would anticipate from likely grounds of dismissal" ( id. at 508-509, 121 S.Ct. 1021 ). Under the plurality's rule, some parties would be similarly incentivized to forum shop by including a federal claim-related or not, colorable or not-along with state law claims. Put differently, the claim- ***92 preclusive effect of a federal court's judgment should not turn on the court's subject-matter jurisdictional basis, but on the source of each claim's underlying substantive law.
In a case heard in federal court, where both a federal claim and a state-law claim are present, the claim-preclusive effect of the federal claim will be determined by federal claim-preclusion doctrine, as Taylor requires, and the claim-preclusive effect of the state-law claim will be determined by state claim-preclusion doctrine, as Semtek provides. Again, the plurality and I agree that, if the claim-preclusive effect of either one would bar a subsequent claim, it does not matter what the effect of the other would be-the subsequent claim is barred. That is, each claim adjudicated on the merits by the federal court will have its own claim-preclusive effect, independent of the others. Take, as an example, a plaintiff who sues for a declaration of patent invalidity (federal claim) and for unfair competition by the patent holder, based on deceptive marketing of the patented product (state-law claim). Each claim, if decided on the merits, will have a different claim-preclusive effect, based on the nature of the claim itself. The patent claim, if decided in the plaintiff's favor, would preclude the patent holder from bringing a later infringement action against the plaintiff (under federal res judicata rules). The unfair competition claim, if decided on the merits, would not bar a subsequent claim by the patent holder for patent infringement. My analytical difference with the plurality (if a federal claim is present, the plurality would apply federal common-law claim preclusion doctrine to determine the effect of all claims in the case, whereas I would apply federal claim-preclusion doctrine to the federal claims and state claim-preclusion doctrine to the state claims) is not the source of our disagreement as to the result here; that disagreement arises from our divergent views on whether the federal court's judgment rejecting Allianz's federal securities fraud claims operates to preclude Paramount from bringing its claim for breach of the covenant not to sue, discussed below.
B.
If, as I believe, the Supreme Court would direct us to apply New York res judicata principles to determine whether Paramount's claim is barred by the prior judgment on the state-law claims, then it would not be barred. (I do not want to read too much into the plurality's opinion but, by deciding this case on the basis of a difficult and unsettled proposition of federal ***93 law, the plurality implicitly agrees that the result would be different under New York law.) Under New York rules of claim preclusion, Paramount's covenant-not-to-sue claim should proceed. When asking whether a litigated claim precludes the defendant in the action from bringing a claim against the original plaintiff, New York's "decisive test" is "whether the substance of the rights or interests established in the first action will be destroyed or impaired by the prosecution of the second" ( Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 308, 165 N.E. 456 [1929] ); see also *758 Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of City of New York, 68 N.Y.2d 456, 461, 510 N.Y.S.2d 63, 502 N.E.2d 978 [1986] ; Eubanks v. Liberty Mortg. Banking Ltd., 976 F.Supp. 171, 173 [E.D.N.Y. 1997] ["Only a defendant who is silent in the first action and then tries to bring a second action that would undermine 'the rights or interests established in the first action' is barred under New York's res judicata rule"] ). With respect to plaintiff claim splitting, New York has adopted the broader, transactional approach of the Restatement (Second) of Judgments (see Reilly v. Reid, 45 N.Y.2d 24, 30, 407 N.Y.S.2d 645, 379 N.E.2d 172 [1978] ). However, those two scenarios must be kept distinct, as New York's claim preclusion rule "has a narrower effect on a defendant who then brings her claim in a separate action than it does on the plaintiff who brings successive claims that arise from the same transaction" ( Eubanks at 173 ).
II.
The plurality asserts that under federal res judicata principles, a defendant in a prior federal question action cannot later assert, in state court, a counterclaim that arises from the same transaction or occurrence as the original federal claim. How can that be? As the plurality correctly notes, it cannot be by means of FRCP 13(a)"by itself" (plurality op. at 72, 73 N.Y.S.3d at 478, 96 N.E.3d at 742).[4] The federal rule cannot prescribe the preclusive effect of a federal judgment on a second, state court action without violating the Rules Enabling Act (see Semtek at 503, 121 S.Ct. 1021 ["(I)t would be peculiar to find a rule governing the effect that must be accorded federal judgments by other courts ensconced in rules governing the internal procedures of the rendering court itself. Indeed, such a rule would arguably ***94 violate the jurisdictional limitation of the Rules Enabling Act"]; 28 USC § 2072 [b] ). There is similarly no question that Federal Rules of Civil Procedure rule 13(a) does not merely codify federal rules of res judicata. If it did, the rule would be superfluous (see Painter v. Harvey, 863 F.2d 329, 333 [4th Cir. 1988] ), and nothing in the legislative history suggests that the drafters meant rule 13(a) as a codification of federal res judicata.
Instead, the plurality suggests a novel theory: although at the time rule 13(a) was enacted, it barred (as a procedural rule applicable only to federal courts) actions that would not have been barred by the doctrine of claim preclusion, federal common law of claim preclusion has "systematically widened" over the years to the point that it is now coterminous with rule 13(a). The plurality's conclusion is completely unwarranted.
As a general matter, the federal cases on which the plurality relies for the proposition that federal common law has expanded to be coterminous with rule 13(a) do not support any such proposition.[5]
*759 Neither the Supreme Court nor any federal Court of Appeals has held that rule 13(a) has been rendered superfluous by the evolution of federal common law ***95 of res judicata, nor could the courts reach that issue except in the context present here, because in cases brought in federal court, rule 13(a) would govern the result, rendering any incidental discussion of federal common law pure dicta.[6]
Second, and much more fundamentally, the doctrine of claim preclusion, which derives from the doctrines of merger and bar, protects the finality of a judgment; courts could not exist unless their judgments meant something, and to mean something, the same essential claim cannot repeatedly be retried by the losing party, in hope of winning someday. Therefore, a plaintiff cannot bring the same or related claims over and over, and the defendant cannot try to attack the original judgment by bringing his or her own claims later. A counterclaim rule, on the other hand, reflects a judgment about whether it would be more efficient to litigate a different claim by a different party in the original lawsuit or a separate lawsuit. A litigant in federal court who chooses not to file a compulsory counterclaim is barred from filing that claim later in federal court, because the federal courts have made a procedural choice that efficiency and fairness would best be served by hearing all claims at once if they arise from the same transaction or occurrence, unless the district court bifurcates the claim for efficiency's sake.[7] The efficiency determination by federal courts is not implicated when a suit is later brought in state court, because a federal court is in no way burdened by the filing of the state court action. With its permissive counterclaim rule, New York ***96 has made a different efficiency choice *760 about procedure, and its courts will bear whatever burden there is in hearing a second case.
Of course, a federal court judgment would preclude a defendant from bringing a state court action that would nullify that federal judgment or impair the rights established in the first action; that is the purpose of claim preclusion. Additionally, because of the procedural choice made in rule 13(a), a defendant would be barred from bringing his or her counterclaim-even if it would not be barred by claim preclusion-in a separate federal court action, because the Federal Rules have made an efficiency judgment about how cases will proceed, and the procedural rules of the federal courts apply to the second action if attempted in federal court.[8] It would be quite strange, though, for the federal court to "extend" the preclusive effect of its judgment to a subsequent claim, arising from the same transaction or occurrence, brought by a defendant seeking to litigate a state-law claim and have his or her own day in state court, where the state has made the choice to allow a defendant that option. Unless a judgment on the separately-filed claim would nullify or undermine the federal judgment, federal courts have neither a res judicata interest nor an efficiency interest in that outcome.
The plurality relies on the history of what constitutes a "claim" for purposes of federal claim preclusion to support its conclusion that federal res judicata now encompasses the compulsory counterclaim law. However, the plurality fails to recognize the different effects of claim preclusion on plaintiffs and defendants. The "expansion" the plurality refers to-what constitutes a claim for purposes of claim preclusion-relates to restrictions on plaintiffs' "claim splitting." When a final judgment is rendered in favor of the plaintiff, the plaintiff cannot later bring an action on the original claim or any claims that ***97 arose out of the same transaction or occurrence, because his or her claims "merged" into the original judgment. Such a rule protects "the interests of the defendant and of the courts in bringing litigation to a close" ( Restatement [Second] of Judgments § 24 cmt b [1982] ). Contrary to the plurality's contention, procedural changes (e.g., rules about joinder of parties) allowed for such an expansion to take place, but the expansion was not a necessary result of such changes.
Claim preclusion restricts the defendant, too, but in different ways. Absent a compulsory counterclaim rule, there are two situations where a defendant in the first action may be barred from bringing a second action on a claim that could have been raised in the first action: where successful prosecution of the counterclaim in a subsequent action would (1) nullify the original judgment or (2) impair the rights of the parties established in the first action (see Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc., 497 F.3d 1096, 1101 [10th Cir. 2007] ; Martino v. McDonald's Sys., Inc., 598 F.2d 1079, 1084-85 [7th Cir. 1979] ;
*761 18 Fed Prac & Proc Juris § 4414 [3d ed]; Restatement [Second] of Judgments § 22 cmt f [1982] ). "For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim" ( Restatement [Second] of Judgments § 22 cmt f). It does not matter that the facts relevant to a counterclaim are also relevant to a defense asserted: "[A]fter litigation of the defense judgment is given for the defendant, the defendant is not precluded by the rule of merger from maintaining a subsequent action against the plaintiff based upon these facts. In the subsequent action, the rules of issue preclusion will apply to issues litigated and determined in the first action" ( Restatement [Second] of Judgments § 22 cmt d). Nor does it matter that the counterclaim itself could also have been raised as a defense: "The failure to interpose a defense to the plaintiff's claim precludes the defendant from thereafter asserting the defense as a basis for attacking the judgment. But the defendant's claim against the plaintiff is not normally merged in the judgment given in that action, and issue preclusion does not apply to issues not actually litigated. The defendant, in short, is entitled to his day in court on his own claim" (id. cmt b; see also Valley View Angus Ranch, at 1101 n. 6 ).
***98 III.
Under both federal and state claim preclusion law, Paramount's claim is not barred. Neither precludes a defendant from bringing a claim arising from the same transaction or occurrence as the plaintiff's claim, unless doing so would nullify the judgment or impair the rights established in the first action. In federal court, rule 13(a) would prevent the defendant from filing separately. This case is not in federal court, our rules-not federal rules-apply, and whether wisely or unwisely, New York has made a different procedural choice. Thus, the only question is whether litigation of Paramount's covenant-not-to-sue claim would nullify the federal court judgment or impair the rights of the parties from the first action.
Although Paramount's claim for breach of the covenant not to sue arises from the contract, it does not in any way attack the judgment or impair Allianz's rights from the first action. How could it when Paramount was victorious in the first action? Issue preclusion would prevent Allianz from relitigating issues it lost, but neither federal nor New York rules of claim preclusion restrict Paramount from bringing its claim for breach of the covenant not to sue in a separate state court action.[9] I therefore dissent.
***99 *762 Order, insofar as appealed from, affirmed, with costs.
Judges Stein and Fahey concur; Judge Rivera concurs in result in an opinion, in which Chief Judge DiFiore concurs; Judge Wilson dissents in an opinion; Judge Feinman took no part.

In a "mixed" subject matter jurisdiction case, jurisdiction is not predicated exclusively on either a federal question under 28 USC § 1331 or diversity under 28 USC § 1332. Such "mixed" cases include, for example, those in which a party asserts both federal and state law claims, and the federal court thus exercises federal question along with diversity or supplemental jurisdiction. Of course, there is no preclusive effect where, pursuant to 28 USC § 1367(c), a federal district court declines to exercise supplemental jurisdiction over a state law claim, because in that case the party asserting the state claim did not have a full and fair opportunity to litigate the issue and the federal judgment does not resolve it. That is not the case before us now, however, since Paramount never asserted its claim in defendants' federal lawsuit.

Contrary to the plurality's contention, the Supreme Court has not conclusively determined which res judicata law applies in these "mixed" subject matter jurisdiction cases (plurality op. at 69 n. 3, 73 N.Y.S.3d at 476 n. 3, 96 N.E.3d at 741 n.3). Indeed, the plurality recognizes that there is no direct case on point and goes to great lengths to counter the dissent's arguments that the Supreme Court would instruct state courts to look at the nature of the underlying claim rather than at the federal judgment (plurality op. at 69-71, 73 N.Y.S.3d at 475-78, 96 N.E.3d at 740-42; dissenting op. at 90, 73 N.Y.S.3d at 491, 96 N.E.3d at 755-56). The question is still undecided, and we need not resolve it here.

In addition, the waiver and covenant not to sue clauses are both part of the same contract provision and indeed the same sentence in section 4(t) of the parties' subscription agreement.

By extension, if the prior action had been filed in a permissive counterclaim jurisdiction, then the party in a subsequent action might not be barred from pursuing the claim, absent some other grounds to preclude.

For example, the investors argued below that entertaining this suit for attorneys' fees separate from the underlying action would require a New York court to look over the shoulder of the federal court and make a number of judgments that were explicitly or implicitly settled by the action, including whether the initial suit was itself in "good faith." Of course, we have no occasion to further consider the question, given the inapplicability of New York's counterclaim rule.

We recognize that "[t]hese strong policy bases, however, if applied too rigidly, could work considerable injustice. In properly seeking to deny a litigant two 'days in court', courts must be careful not to deprive [a litigant] of one" (Matter of Reilly, 45 N.Y.2d at 28, 407 N.Y.S.2d 645, 379 N.E.2d 172 ). Thus, res judicata does not bar separate litigation of a second claim where more than one claim arises out of a "course of dealing between the same parties" (id. at 28-29, 407 N.Y.S.2d 645, 379 N.E.2d 172 ). Contrary to the argument advanced in the dissent, that is not the case here (dissenting op. at 97 and 95 n. 6, 73 N.Y.S.3d at 496 and 494 n. 6, 96 N.E.3d at 760-61 and 759 n. 6).

See 18 Fed Prac & Proc Juris § 4414 [3d ed] ["(S)ubsequent litigation so close to the first action as to present questions of defendant preclusion ordinarily 'arises out of the transaction or occurrence that (was) the subject matter of' the first action, and is foreclosed by direct operation of rule 13(a)"] [emphasis added] ).

A compulsory counterclaim rule is not the only option. A court could adopt a counterclaim rule requiring that, when A sues B, both A and B must join every claim they have at the time against each other, even if the claims have no common factual nexus. Likewise, a court rule could say nothing about counterclaims, and allow claims (not otherwise barred by res judicata) to be brought in separate actions or not. A court could even have a procedural rule barring the bringing of counterclaims (other than those that would be barred by res judicata). Yet, in none of those cases is the counterclaim rule necessary to preserve the meaning of the court's judgment. Res judicata is what protects the judgment and the rights of the parties established in that judgment, regardless of the counterclaim rule.

It is hardly clear that Paramount's claim for breach would constitute a compulsory counterclaim under rule 13(a). In affirming the district court, the United States Court of Appeals for the Second Circuit noted that Allianz "do[es] not assert that Paramount committed any misconduct or wrongdoing apart from the misrepresentations or omissions Paramount purportedly made in the offering documents" (Marathon Structured Finance Fund, LP v. Paramount Pictures Corp., 622 Fed.Appx. 85, 86 [2d Cir. 2015] ). The district court held that the offering statements were truthful, which finding the Second Circuit affirmed. Alllianz's claims arose from the alleged falsity of the offering statements; Paramount's claim for breach arises from a specific contract provision, not the offering statements. The parties cite no law, apparently because there is none, in which a court has held that rule 13(a) requires a claim of breach of a contractual covenant not to sue be filed as a compulsory counterclaim to a fraud claim. The plurality contends that the absence of law on this point is because parties always state breaches of the covenant not to sue as counterclaims, not separate lawsuits, and cites some examples. Here are some examples of litigants who took the opposite approach: see e.g. Grendene USA, Inc. v. Brady, 2015 WL 1499229, at *3 [S.D. Cal. 2015] [holding breach of covenant not to sue claim was not compulsory under FRCP 13(a) because "(the prior action) involves facts dealing with alleged infringement ... This action involves facts dealing with the Bradys decision to file a lawsuit based on that alleged infringement ... These are separate facts as the decision to bring a legal cause of action is separate from the elements of that cause of action"]; Gramercy Advisors, LLC v. Ripley, 2014 WL 4188099, at *8 [S.D. N.Y.2014] ; Oracle Corp. v. ORG Structure Innovations LLC, 2012 WL 12951187, at *5 [N.D. Cal. 2012] ; Abbott v. Okoye, 2010 WL 3220184, at *3 [E.D. Cal. 2010], affd 460 Fed.Appx. 678 [9th Cir. 2011]. Permissive counterclaim jurisdictions give defendants the choice; defendants make different choices based on their strategic judgments.