**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1574**

EQUITRANS, L.P., a Pennsylvania Limited Partnership,

        Plaintiff – Appellee,

    v.

JEFFERY J. MOORE; SANDRA J. MOORE,

        Defendants – Appellants,

    and

0.56 ACRES MORE OR LESS OF PERMANENT EASEMENT LOCATED IN MARION COUNTY, WEST VIRGINIA,

        Defendant.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Frederick P. Stamp, Jr., Senior District Judge. (1:15-cv-00106-FPS-JES)

Argued: January 24, 2018                           Decided: March 6, 2018

Before TRAXLER and FLOYD, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Kenneth Eugene Webb, Jr., BOWLES RICE, LLP, Charleston, West Virginia, for Appellants. David K. Hendrickson, HENDRICKSON & LONG, PLLC, Charleston, West Virginia, for Appellee. **ON BRIEF:** Patrick Craig Timony, BOWLES RICE, LLP,

Charleston, West Virginia, for Appellants. Barbara A. Samples, HENDRICKSON & LONG, PLLC, Charleston, West Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Equitrans, L.P. moved under the Natural Gas Act, 15 U.S.C. § 717 (NGA), to condemn .56 acres of real property owned by Jeffrey and Sandra Moore. The district court denied the Moores' motion to dismiss the complaint, *Equitrans, L.P. v. .56 acres of Permanent Easement*, 145 F.Supp.3d 622 (N.D. W.Va. 2015), and following a trial, awarded the Moores $5,556.16 in just compensation. The Moores now appeal, contending that the district court erred in concluding that their property was subject to condemnation. For the following reasons, we affirm.

I.

In 1960, Equitrans' predecessor entered into a right-of-way agreement with Jeffrey Moore's family to build a 16-inch natural gas pipeline (H-557) under a portion of the Moores' current property. In early 1994, Equitrans discovered possible corrosion and pitting with H-557. Because H-557 is an important transmission and storage line for West Virginia, prompt replacement was necessary. In order to maintain pipeline pressure during repairs, Equitrans built new sections of pipeline beside the original pipe and then tied the new sections into the existing H-557.

In early 2012, the Moores began questioning Equitrans about the location of H-557 on the property and whether it deviated from the 1960 right-of-way. Equitrans marked the location and explained that it was within the right-of-way. The Moores disagreed and filed suit in state court alleging claims for breach of contract, ejectment, and trespass.

Equitrans timely removed the case to federal court on the basis of diversity jurisdiction and filed a counterclaim for prescriptive easement. Following discovery, both

3

sides moved for summary judgment. In its motion, for the first time, Equitrans mentioned that "to the extent that this Court is inclined to deny Equitrans' motion for summary judgment, Equitrans asks this Court to grant it leave to file a counterclaim for condemnation." (J.A. 194). The district court denied the cross-motions for summary judgment. *Moore v. Equitrans, L.P.*, 49 F.Supp.3d 456 (N.D. W.Va. 2014). Equitrans did not move for leave to file a condemnation action and the case proceeded to trial. Following a two-day trial, the jury found that two sections of H-557, totaling 624 feet, were outside the right-of-way. The jury also rejected Equitrans' counterclaim for prescriptive easement. The district court entered an order adopting the jury's findings but deferring ruling on whether the Moores were entitled to ejectment. The court then stayed the entire action to permit Equitrans to file for condemnation.

Thereafter, Equitrans filed a complaint in condemnation pursuant to the NGA against .56 acres of the Moores' property. The .56 acres represents the area covering the 624 feet of H-557 outside the right-of-way plus 25 feet on either side for maintenance purposes. Equitrans alleged that it holds a certificate of public convenience issued by the Federal Energy Regulatory Commission (FERC) for the operation of H-557; that the condemned property is necessary to the continued operation of the pipeline; and that Equitrans and the Moores were unable to come to a contractual agreement on obtaining the right-of-way.[1]

---

[1] Equitrans alleged that its appraisal determined the property was valued at $700 and that the Moores had rejected a previous offer of $25,000 and a more recent offer of

4

The Moores moved to dismiss the action, arguing that (1) Equitrans failed to satisfy the NGA's requirements for condemnation; (2) the condemnation claim was a compulsory counterclaim in the Moore's action; (3) Equitrans was estopped from moving for condemnation; and (4) condemnation violated the Moores' Fifth and Fourteenth Amendment rights. The district court denied the motion, concluding that the .56 acres were subject to condemnation. *Equitrans,* 145 F.Supp.3d at 627-29. In light of its conclusion that Equitrans was entitled to condemn the property, the district court held a trial only on the issue of the just compensation due for the taking and ultimately awarded the Moores' $5,556.16.

## II.

The Moores argue that the district court erred in permitting Equitrans to take the property. [2] We review the district court's conclusion that Equitrans was entitled to condemn the Moores' property under the NGA *de novo*. *Southern Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1372 (11th Cir. 1999) (reviewing legal questions presented in NGA condemnation action *de novo*).

The Moores' primary argument is that the district court erroneously concluded that Equitrans had complied with the condemnation procedures of the NGA. The NGA "created

---

$7,000. The Moores most recent counter-offer, according to the complaint, was for $600,000.

[2] The Moores raise the same four arguments they pursued in the district court. We have reviewed their claims that judicial estoppel bars Equitrans from pursuing condemnation and that the condemnation violates the Constitution and find both to be without merit.

a comprehensive regulatory scheme over matters relating to the transportation of natural gas and its sale in interstate and foreign commerce," including the rare step of granting a private entity, natural gas pipeline operators, the power "to acquire by eminent domain in the district courts the rights-of-way necessary to operate and maintain their pipelines." *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552, 555-56 (4th Cir. 1999). Section 717f(h) grants the condemnation power:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line . . . it may acquire the same by the exercise of the right of eminent domain in the district court.

15 U.S.C. § 717f(h).

Here, Equitrans holds a certificate of public convenience issued by FERC for the operation of H-557. The Moores contend, however that Equitrans already acquired the necessary property by contract but then subsequently breached the contract. In concluding otherwise, the district court determined that Equitrans satisfied § 717f(h) because at the time it filed the condemnation action, it was "unable to agree" with the Moores.

We agree with the district court. As that court recounted, Equitrans attempted to purchase the land from the Moores but was rebuffed. The land itself was necessary for the maintenance of a pipeline in light of the fact that H-557 currently runs through it.[3] In this context, once the certificate "is issued by the FERC, and the gas company is unable to

---

[3] A prior trespass does not bar a subsequent suit for condemnation. *Searl v. Sch. Dist. No. 2, of Lake Cnty.*, 133 U.S. 553, 564-65 (1890).

acquire the needed land by contract or agreement with the owner, the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking." *Maritimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 Fed. App'x 495, 498 (1st Cir. 2005). Here, Equitrans has a certificate and cannot acquire the needed land by contract with the Moores. That is all the NGA requires for a condemnation.

Next, the Moores argue that the district court erred in concluding that the condemnation claim was not a compulsory counterclaim in the earlier action. Rule 13(a) provides that a:

> (1) A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a).

We have identified four "inquiries" as guiding the determination of whether a counterclaim was compulsory:

> (1) whether the issues of fact and law in the claim and counterclaim are essentially the same; (2) whether *res judicata* would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule; (3) whether the same evidence would support or refute the claim and the counterclaim; and (4) whether there is a logical relationship between the claim and counterclaim.

*Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006). We "need not answer all these questions in the affirmative for the counterclaim to be compulsory" because the inquiries "are less a litmus, more a guideline." *Painter v. Harvey*, 863 F.2d 329, 331 (4th

7

Cir. 1988). Underlying most of the inquiries is a focus on evidentiary similarity because "[w]here . . . the same evidence will support or refute both the claim and the counterclaim, the counterclaim will almost always be compulsory." *Id.* at 332.

The district court found that the condemnation action was not a compulsory counterclaim because the facts, law, and evidence supporting it "are very different" from the Moores' trespass action. *Equitrans*, 145 F.Supp.3d at 629. In addition, the court noted that the condemnation claim was "logically dependent" upon the Moores' action only "to the extent that [Equitrans] could not seek condemnation until it was determined that the relevant portions of the pipeline are outside the . . . right-of-way." *Id.* As discussed above, in a condemnation action, the relevant fact is the question of just compensation; in contrast, the Moores' action required a detailed look at the original 1960 right-of-way, the meaning of terms in that contract, and surveys detailing the location of H-557 relative to the right-of-way. These facts and the legal determinations that flow from them are distinct from the question of just compensation. The "same evidence" does not "support or refute both the claim and the counterclaim," and therefore the condemnation claim was not a compulsory counterclaim in the Moores' original action.

## III.

The district court correctly determined that the Moores' land is subject to condemnation under the NGA. We therefore affirm its award of $5,556.16 in just compensation to the Moores.

*AFFIRMED*

8